No. 14853

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

FRANCIS HAYES,

Plaintiff and Appellant,

vs.

AETNA FIRE UNDERWRITERS, a
corporation, and GEORGE WOOD,
d/b/a COMPENSATION ADJUSTERS, INC.,

Defendants and Respondents.

Appeal from:  District Court of the Fourth Judicial District,
Honorable Jack L. Green, Judge presiding.

Counsel of Record:

For Appellant:

Hoyt, Trieweiler, Lewis & Regnier, Great Falls, Montana
John Hoyt argued, Great Falls, Montana

For Respondents:

Garlington, Lohn & Robinson, Missoula, Montana
Larry E. Riley argued, Missoula, Montana
Church, Harris and Johnson, Great Falls, Montana
Cresap S. McCracken argued, Great Falls, Montana

Submitted: January 15, 1980

Decided: **MAR 1 8 1980**

Filed:  **MAR 1 8 1980**

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from a judgment of dismissal of plaintiff's action from the District Court of the Fourth Judicial District, in and for the County of Missoula.

Plaintiff was injured within the course and scope of his employment with JMS Construction in an industrial accident that occurred on October 23, 1975. Defendant Aetna was the Plan II carrier for JMS Construction. Aetna employed defendant Wood to handle the adjusting of workers' compensation claims on its behalf. Both defendants accepted plaintiff's workers' compensation claim as compensable under the Workers' Compensation Act.

In January 1977, plaintiff filed a complaint against Aetna and Wood in the District Court of the Fifteenth Judicial District, in and for the County of Roosevelt, alleging tortious acts on the part of Aetna and Wood with respect to the adjusting and handling of his workers' compensation claim. Aetna and Wood appeared and moved to dismiss. The Roosevelt County District Court granted the motion to dismiss on May 12, 1977, determining that plaintiff first had to establish his right to compensation before the Workers' Compensation Court, which possessed exclusive jurisdiction.

Following the Roosevelt County District Court's dismissal, plaintiff pursued his claim for workers' compensation benefits before the Workers' Compensation Court, wherein he prevailed. Aetna then appealed the Workers' Compensation decision to the Montana Supreme Court. This Court affirmed the decision of the Workers' Compensation Court. Hayes v. J.M.S. Const. (1978), _____ Mont._____, 579 P.2d 1225, 35 St.Rep. 722.

Thereafter, plaintiff filed an amended complaint in Roosevelt County District Court in July 1978, alleging that Aetna and Wood had committed the intentional torts of fraud, conversion and intentional infliction of emotional distress. Plaintiff also alleged that Aetna and Wood had continuously refused to pay

compensation benefits and medical bills. Both Aetna and Wood moved to dismiss in August 1978. On September 12, 1978, the Roosevelt County District Court denied the motions of Aetna and Wood to dismiss and ordered responsive pleadings.

The case was then transferred to Missoula County by stipulation of counsel, together with a memorandum opinion issued by the Honorable M. James Sorte, Judge of the District Court, Fifteenth Judicial District, Roosevelt County. The pertinent part reads:

> "By reason of a stipulation filed by counsel,
> this case is transferred to the jurisdiction of
> Missoula County, Montana. However, there has been
> filed in the case, Plaintiff's Reply to the Ob-
> jections by Aetna Fire Underwriters to Plaintiff's
> Motion to Dismiss. The tenor of the reply is that
> counsel for Plaintiff entered into a stipulation
> that the matter could be transferred to Missoula
> County but counsel for Defendants have raised
> certain questions that have already been ruled
> upon by this Court. It is the opinion of this Court
> that the matters that have been briefed, considered
> by the Court, and ruled upon, are the rule and law
> of the case in this matter and that the District
> Court of the Fourth Judicial District is and should
> be bound by the rulings of this Court on all matters
> that have been previously brought before the Court,
> ruled upon, and are now final for those reasons.
> To allow counsel to again raise the same questions as
> have been ruled upon by this Court would do nothing
> less than encourage counsel to shop around for a
> different venue so that their position could be ruled
> upon on several occasions. All of this is contrary
> to the clear intent of our rules of procedure."

In disregard of Judge Sorte's Opinion, Wood and Aetna refiled in the Missoula County District Court on February 28, 1979 and March 13, 1979, respectively, motions which had been previously ruled upon in Roosevelt County. Such refiling constitutes a contempt. Sections 3-1-502 and 503, MCA. On June 1, 1979, the Missoula County District Court filed an order dismissing plaintiff's complaint upon the grounds that the District Court lacked juris-diction because exclusive jurisdiction rested with the Workers' Compensation Court under section 92-204.1, R.C.M. 1947, and the complaint failed to state a claim against the defendant upon which

relief could be granted.

Plaintiff now appeals from the judgment of the Missoula County District Court granting the defendants' motions to dismiss.

The appellant in this case states the issue for review by this Court as follows: whether a worker who sustains an injury covered by the Workers' Compensation Act may assert in District Court a separate claim for damages alleging that the insurer and its adjustor committed intentional torts and acted in bad faith in adjusting and processing the workers' compensation claim. Stated in another manner, is a complaint alleging that a workers' compensation insurer and its adjustor committed the intentional torts of fraud, conversation, and intentional infliction of emotional distress upon a workers' compensation claimant within the exclusive subject matter jurisdiction of the Workers' Compensation Court?

Respondent George Wood agrees with the issue as stated by appellant. Respondent Aetna would like to confine the issue to the question: can the injured workman have his cake and eat it too?

We will accept the issues as formulated by appellant.

The dismissal by the Missoula District Court dated May 31, 1979, is with prejudice for lack of jurisdiction and exclusive jurisdiction in the Workers' Compensation Court under section 92-204.1, R.C.M. 1947, and because the complaint fails to state a claim against the defendant upon which relief can be granted.

It is a little difficult to agree or disagree with the Missoula District Court because the presiding judge rendered no opinion. We do not know if the court meant that under the exclusivity provision of section 92-204.1, R.C.M. 1947, (now section 39-71-411, MCA) the Workers' Compensation Court has jurisdiction to try willful torts not arising out of the actual employment or

that the pleading was such that it did not state a claim in any court.  In any case, the dismissal appears to be in direct conflict with the law of the case as established by the District Court of the Fifteenth Judicial District, the court of original jurisdiction.

We will not attempt to evaluate the merits of the dismissed case by the manner in which it was pleaded, but rather try to evaluate it from the standpoint of the type of action at bar and its genesis.

At the center of the dispute is the exclusivity provision of the Montana Workers' Compensation Act, which is set forth in section 39-71-411, MCA.  That statute states:

> "For all employments covered under the Workers' Compensation Act or for which an election has been made for coverage under this chapter, the provisions of this chapter are exclusive.  Except as provided in part 5 of this chapter for uninsured employers and except as otherwise provided in the Workers' Compensation Act, an employer is not subject to any liability whatever for the death of or personal injury to an employee covered by the Workers' Compensation Act or for any claims for contribution or indemnity asserted by a third person from whom damages are sought on account of such injuries or death.  The Workers' Compensation Act binds the employee himself, and in case of death binds his personal representative and all persons having any right or claim to compensation for his injury or death, as well as the employer and the servants and employees of such employer and those conducting his business during liquidation, bankruptcy, or insolvency."  (Emphasis added.)

Professor Larson in his treatise on Workmen's Compensation Law has categorized exclusivity statutes in state workers' compensation schemes into three general types.  Larson, Workmen's Compensation Law, § 66.00, at 12-20, 21.  Montana's statute is a blend of two categories.  It is intended to be a broad surrender of liability.  It partakes of the California and Michigan type statutes, which state that an employer shall have "no other liability whatsoever,"  and the New York type statute, which carries the surrender of liability one step farther by specifying that

- 5 -

the excluded action includes those by "such employee, his personal representative, husband, parents, dependents or next of kin, or anyone otherwise entitled to recover damages, at common law or otherwise on account of such injury or death." The last category is the Massachusetts type, which is the narrowest and states that the employee, by coming within the act, only waives his common law rights.

In three recent cases, this Court has been concerned with the exclusivity of Montana's Workers' Compensation Act. Each time the Court has resolved any doubt about the exclusivity of remedies in favor of the provisions of the Act. See Jacques v. Nelson (1979), ___Mont.___, 591 P.2d 186, 36 St.Rep. 287; Carlson v. Anaconda Co. (1974), 165 Mont. 413, 529 P.2d 356. Cordier v. Stetson-Ross, Inc. (1979), ___Mont.___, 604 P.2d 86, 36 St.Rep. 2107.

Respondents urge that Carlson is on all fours with the present cases. Carlson may be distinguished from the case at bar, however, on the basis that the facts and circumstances in Carlson give the case a much different character. Whereas the present case involves intentional torts or the presence of bad faith, Carlson involved a case of negligence or mismanagement. In Carlson, the Court seems to have accepted Anaconda's argument that the failure to pay resulted from a mix-up in record keeping, not from bad faith. The Court distinguished Carlson from cases like Reed v. Hartford Accident & Indemnity Co. (E.D. Pa. 1973), 367 F.Supp. 134, which involved the commission of intentional torts. In Carlson, the Court stated:

> "Reed, cited by plaintiff is distinguishable on the facts. There the action at law was against the employer's Workmen's Compensation insurance carrier based on independent intentional torts and breach of an express contract to pay total disability benefits by false, fraudulent and perjured means. This is a far cry from the facts here and the attempted analogy fails." 165 Mont. at 417, 529 P.2d at 358.

Jacques involved a claimant who filed a common law tort action in District Court against his employer, Anaconda Company, for injuries sustained while he was working as an employee at the Anaconda Reduction Works. Anaconda was a Plan I self-insurer under the Workers' Compensation Act who had failed to file an employer's first report of injury or to give the required notice that the claim was being denied. Anaconda moved to dismiss the complaint on the grounds that Jacques' remedy was exclusively within the Workers' Compensation Act. The motion was granted. Upon appeal, Jacques contended that the Act was not his exclusive remedy because Anaconda had elected not to comply with certain mandatory requirements of the Act. This Court rejected Jacques' argument by stating:

> "The Act requires the employer to file a first report of injury. . . Here, plaintiff's employer failed to do so. The Act provides a civil penalty of not more than $1,000 against the employer for failure to file the first report of injury. . . Nowhere in the Act does such failure constitute an election by the employer not to be bound by the Act or subject him to a common law tort action. The mandatory coverage of all private employment not expressly exempted under the Act would be nullified were we to hold that such failure removes Workmen's Compensation coverage.

> "The Act further requires the employer to give written notice to the employee of denial of his claim. . . Plaintiff alleges he never received such notice. The Act provides for the imposition of a 10% penalty if compensation is awarded by the Workers' Compensation Court. . . Nowhere in the Act does failure to give such notice remove the employer from coverage under the Act or subject him to a common law tort action.

> "If the law were otherwise, the purpose and intent of the mandatory coverage of the Act would be effectively subverted. The employer could eliminate the coverage of the Act over a particular employee or a particular accident at will simply by refusing to file an accident report or failing to notify its employee of a denial of his claim. This would indeed be a unique and unparalleled kind of Workmen's Compensation Act coverage." Jacques, supra, 591 P.2d at 187, 188.

Again, respondents urge that Jacques is persuasive and controlling. Jacques may be distinguished from the cases at bar,

however, on the basis that it involved an action in District Court against an employer for injuries sustained by an employee during the course of his employment, whereas the present cases involve actions in District Court against insurers and their adjusters for intentional torts committed after the employment relationship had ceased. Where the exclusivity statute states that "an employer is not subject to any liability whatever for the death of or personal injury to an employee," Jacques clearly fits within the exclusion. (Emphasis added.)

The law is very clear and Montana follows it with regards to Workers' Compensation exclusivity and the exclusive jurisdiction of the Workers' Compensation Court to settle disputes of all kinds that arise in good faith and legitimately out of workers' claims. Yet, the respondents fail to follow the argument through the problems we face in the case at bar. What happens to an intentional or bad faith tort that arises, not out of the workers' employment, but after his employment has ceased? Although it is not new in the law, Montana has not reached that situation until now. Other jurisdictions have been confronted with the precise issue presented in this case, Gibson v. Nat. Ben Franklin Ins. Co. (1978), ____Me.____, 387 A.2d 220; Martin v. Travelers Insurance Company (1st Cir. 1974), 497 F.2d 329; Stafford v. Westchester Fire Ins. Co. of N.Y., Inc. (Alaska 1974), 526 P.2d 37; Unruh v. Truck Insurance Exchange (1972), 102 Cal.Rptr. 815, 498 P.2d 1063; Coleman v. American Universal Ins. Co. (1970), 86 Wis.2d 615, 273 N.W.2d 220. See also Reed, supra. These cases have upheld the right of a claimant to bring an action in District Court against an insurer and its adjuster for independent intentional torts committed in the processing of a workers' compensation claim.

The right has been upheld on several different grounds. First, and most frequently, the courts have upheld the right to bring an action for independent intentional torts because the

tortious conduct, which gives rise to the action, does not arise out of the original employment relationship. It occurs after employment and arises out of the employee's relationship with the insurance carrier after the employment relationship has been terminated. It is predicated on an act after the injury and during the settlement of the claim. The insurance carrier is no longer the "alter ego" of the employer, but rather is involved in an independent relationship to the employee when committing such tortious acts. Gibson, 387 A.2d at 222-223; Reed, 367 F.Supp. at 135; Martin, 497 F.2d at 330-331; Stafford, 526 P.2d at 43; Unruh, 498 P.2d at 1073; Coleman, 273 N.W.2d at 223. Perhaps the best statement of the concept is found in Coleman, which stated:

> "The injury for which remedy is sought in the instant case is the emotional distress and other harm caused by the defendants' intentional acts during the investigation and during the course of payment of the claim. This claimed injury was distinct in time and place from the original on-the-job physical injury which was subject to the Compensation Act. The injury for which recovery is sought in the present actions did not occur while the plaintiff was employed or while he was performing services growing out of and incidental to his employment. As the plaintiff repeatedly and correctly stresses in his brief, this action is based not on the original work-related injury but on a second and separate injury resulting from the intentional acts of the insurer and its agents while investigating and paying the claim. The Act does not cover the alleged injury, and the exclusivity provision does not bar the claim." 273 N.W.2d at 223.

The second basis upon which courts have upheld the right to bring an action for independent intentional torts concerns the penalty provisions of the state workers' compensation acts. Many state acts like Montana's contain provisions which create penalties where employers fail to pay benefits or exercise unreasonable delay in paying such benefits. Several courts have determined that these provisions are not exclusive with respect to a claimant's remedies because legislatures did not contemplate them as being remedies for intentional wrongdoings. Where the wrong is

intentional, malicious and calculated to cause intimidation, courts have held that a claimant is entitled to another remedy. Gibson, 387 A.2d at 223; Martin, 497 F.2d at 331; Stafford, 526 P.2d at 43; Coleman, 273 N.W.2d at 224.

One court has determined that the character of the penalty provisions within the workers' compensation schemes is such that they are especially applicable to kinds of conduct which are not intentional. Though they may be triggered by intentional wrongdoings or the presence of bad faith, they apply to conduct which falls short of bad faith, such as cases of mismanagement or deficient administrative practices. Where intentional wrongdoing is involved, one court has stated that the conduct cannot merely be expiated by penalty payments augmented in the amount of 10%. Coleman, supra, 273 N.W.2d at 224.

Other bases have been offered by courts to substantiate the right as well. One court has relied upon a state constitutional provision, such as Article II, section 16, 1972 Montana Constitution, which provides that every person shall have a remedy by due course of law for an injury done to him. Gibson, supra, 387 A.2d at 223.

The weight of authority has resolved this issue in favor of an independent action in the District Court for an intentional tort, as it does not arise out of an employment relationship. The penalty provisions of state schemes are not intended as remedies for intentional wrongdoings. The Compensation Act should not be a "shield" which will insulate those who would engage in intentional wrongdoing in the settlement and investigation of workers' claims. No one should be allowed intentionally and tortiously to cut off a claimant unilaterally for whatever purpose they choose and then hide behind workers' compensation exclusivity in assurance that the only retribution will come in the form of a compensation penalty

- 10 -

paid for by society.

Insofar as the plea made by the respondents in their limited defense of the carrier, we can only add that any party involved in the business of insurance knows its rights and responsibilities as well as its obligation to deal in good faith and with fairness toward those who are entitled to the protection of the Workers' Compensation Act.

The order and judgment dismissing plaintiff's complaint is hereby vacated and set aside and the cause remanded to the District Court for further proceedings.

_____

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice John Conway Harrison specially concurring:

In signing this opinion, I must express a real concern—one perhaps that needs the attention of the legislature if our workers' compensation system is to properly care for the needs of our citizens. I recognize the right of a claimant to bring an action for the commission of an intentional tort in the settling of a workers' compensation claim. I am concerned, however, with the effect of these cases on the practical workings and operation of the workers' compensation system. Today we possibly open the door to abuse in the settling of workers' compensation claims. A claimant who disagrees with a settlement offer made to him by an insurance adjuster may escape the provisions of the Workers' Compensation Act by merely alleging the commission of an intentional tort. This may prove to be a tactic that places insurance adjusters at a severe disadvantage in settling claims. I have no special affinity for insurance adjusters. However, this is not the fashion in which the legislature envisioned the settlement process to operate.

The safeguards against this type of abuse lie in the procedures established for dismissing actions that lack merit at the District Court level. The safeguards include motions for summary judgment and motions for directed verdicts. Prompt impositions of these safeguards will protect against abuse of the workers' compensation settlement process by lessening the possibility that an insurance adjuster will be forced to defend against a claim that lacks merit. The case here is before the Court on a motion to dismiss. At this stage of the proceedings, the allegations of the complaints must be taken as true and do state a cause of action for intentional tort. I, therefore, agree

-12-

procedurely with the result reached in the case. I cannot say, however, that I would agree with the results if the case came to us after summary judgment. The claimant would have to produce much more evidence than the record now indicates exists before the facts would show intentional wrongdoing by the insurance adjuster in this case. This is especially true given the real practical problems of abuse of the workers' compensation system that may occur if this Court and the District Courts do not carefully enforce the safeguards provided by the judicial process. I therefore join in the opinion of the Court in this case, but with the above-noted reservations.

John Conway Harrison
Justice