No. 83-525

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JAMES G. BIRKENBUEL,

        Plaintiff and Appellant,

   -vs-

MONTANA STATE COMPENSATION INSURANCE
FUND,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hoyt & Trieweiler; Kurt M. Jackson, Great Falls,
        Montana

    For Respondent:

        Barbara L. Bozman-Moss, Agency Legal Services Bureau,
        Helena, Montana

---

Submitted on Briefs: May 3, 1984

Decided: August 28, 1984

Filed: AUG 28 1984

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

James G. Birkenbuel appeals the decision of the Cascade County District Court granting defendant's motion for summary judgment. Birkenbuel's tort action against the State Compensation Insurance Fund (State Fund) was dismissed pursuant to the exclusive remedy clause of the Workers' Compensation Act, section 39-71-411, MCA. We reverse.

Plaintiff Birkenbuel suffered a compensable injury in 1980. Birkenbuel's employer was insured by the State Fund in accordance with compensation Plan III. Section 39-71-2301 et seq., MCA. The State Fund paid Birkenbuel bi-weekly temporary total disability payments during his healing period.

In early 1983, the State Fund determined that Birkenbuel had achieved maximum healing. Settlement negotiations were initiated with the plaintiff. Birkenbuel retained John Hoyt to represent him in these proceedings.

Initially the State Fund proposed that $6,000 be paid Birkenbuel in periodic payments. This figure was based on a 20 percent impairment rating of the knee. Birkenbuel responded through his attorney with a $35,000 lump sum proposal. This offer was designed to allow the claimant to start his own business.

The $35,000 offer was deemed excessive by the State Fund in light of the impairment rating and other considerations. A counteroffer of $17,325 was made to Birkenbuel.

This counteroffer was reduced to writing, and a formal petition for full and final compromise settlement was submitted to Birkenbuel for his signature on May 19, 1983. Birkenbuel's attorney initially rejected the counteroffer, negotiating for a full and final settlement that could be

reopened within four years. After no success, the attorney for the claimant waived his fees, and drafted a cover letter to the State Fund accepting the terms of the petition. Accompanied by this letter and the petition, Birkenbuel traveled to the Helena State Fund office to accept the $17,325 offer.

The petition was not honored by the State Fund. In rejecting its previous offer, the State Fund took exception to the strongly worded cover letter drafted by claimant's counsel.

Suit was filed June 7, 1983, alleging tortious acts on the part of the State Fund. Specifically, Birkenbuel alleged the State Fund breached both a common-law and a statutory duty under the Unfair Trade Practices Act, section 33-18-101 et seq., MCA, to negotiate in good faith. Alternately, the plaintiff alleged the State Fund acted fraudulently and intentionally inflicted emotional distress. Actual and punitive damages were requested.

The State Fund filed a motion to dismiss arguing the District Court action was barred by the exclusive remedy provision of the Workers' Compensation Act. It was also argued that the State Fund was a state agency and punitive damages were not recoverable.

The motion to dismiss was converted to a motion for summary judgment by the District Court. Plaintiff took the depositions of Robert F. Owens, the claims examiner for the State Fund who handled plaintiff's workers' compensation claim, Peter J. Strizich, supervisor of the State Fund claims department, and A. G. Pillen, a former bureau chief of the State Fund.

3

The court granted summary judgment for the State Fund and dismissed Birkenbuel's complaint. Birkenbuel appeals this judgment raising the following issues:

(1) Is a tort action against the State Fund for bad faith in settling a compensable claim barred by the exclusive remedy provision of the Workers' Compensation Act?

(2) Are punitive damages recoverable against the State Fund?

In essence, the exclusive remedy clause of the Workers' Compensation Act, section 39-71-411, MCA, immunizes the employer from common-law actions for work-related injuries. Elimination of common-law actions was the quid pro quo surrendered by workers in return for the benefits of a statutory system of more certain compensation for work-related injuries regardless of fault.

Certain exceptions have been recognized to the exclusive remedy clause and a related provision in the Act, section 39-71-2905, MCA. The latter section provides that the penalties and assessments of Chapter 71 are the only assessments that can be made against an insurer for compensation disputes.

The District Court failed to acknowledge two prior decisions of this Court construing exclusive remedy exceptions. In Hayes v. Aetna Fire Underwriters (1980), 187 Mont. 148, 609 P.2d 257, we held an injured worker could assert a separate claim in District Court alleging a private insurer committed intentional torts and acted in bad faith in adjusting and processing a compensation claim. The defendant in Hayes was a Plan II private insurer of the plaintiff's employer. Section 39-71-2201 et seq., MCA. In Vigue v. Evans Products Co. (1980), 187 Mont. 1, 608 P.2d 488, we applied a

4

similar ruling to a Plan I self-insurer. Section 39-71-2101 et seq., MCA. The current case presents the third situation--a tort action against the State Fund, the Plan III insurer.

The reasoning of our decisions in Hayes and Vigue is equally applicable to the present case. The alleged tortious conduct did not arise within the employment relationship of Birkenbuel and his employer. The emotional injury described in the complaint occurred subsequent in time to his employment and is not work-related.

Our statutory system of workers' compensation does not provide workers with benefits for injury sustained from settlement negotiations with an insurance carrier. As such, the exclusivity provisions of the Workers' Compensation Act do not bar independent actions for tortious conduct arising from such interactions. Any contrary interpretation would result in the inequity whereby workers surrendered more protection than they received when our statutory system of compensation was adopted.

Birkenbuel pled a breach of common-law and statutory duties of good faith in insurance settlement negotiations. The State Fund argued that it is not a private insurance company and not subject to the provisions of the insurance code.

Bad faith in claim settlement is an actionable tort independent of the insurance code; we need not reach the question of the applicability of the code to the State Fund. In Lipinski v. Title Ins. Co. (Mont. 1982), 655 P.2d 970, 977, 39 St.Rep. 2283, 2291, we held ". . . insurance companies have a duty to act in good faith with their insureds,

5

and that this duty exists independent of the insurance contract and independent of the statute."

The State Fund may not be a private insurance company that actively pursues the sale of insurance policies. However, it is a publicly administered body that indemnifies employers for work-related injuries. Insurance contracts are executed with employers who choose Plan III coverage. These employers pay premiums for the coverage and at the end of the year the State Fund returns excess funds to its insureds in the form of dividends. The question of whether or not the State Fund is technically an insurance company presents a needless exercise in semantics. For all practical purposes the State Fund is involved in the business of insurance. What this Court said in Hayes is equally true today:

> ". . . No one should be allowed intentionally and tortiously to cut off a claimant unilaterally for whatever purpose they choose and then hide behind workers' compensation exclusivity in assurance that the only retribution will come in the form of a compensation penalty paid for by society.
>
> ". . . any party involved in the business of insurance knows its rights and responsibilities as well as its obligation to deal in good faith and with fairness toward those who are entitled to protection of the Workers' Compensation Act." 609 P.2d at 262.

The State Fund has sought to sidestep the precedent of Vigue and Hayes by asserting in its brief that the decisions were based on the finding that the defendant insurers violated the policy and the spirit of the insurance code, ". . . in particular section 33-18-201, MCA."

The insurance code played no part in our decision in Hayes or Vigue. Section 33-18-201, MCA, which relates to unfair trade practices, is neither cited nor referred to in

6

either Hayes or Vigue. As discussed above, both cases were decided upon our interpretation of the exclusivity provisions of the Workers' Compensation Act, sections 39-71-411 and 39-71-2905, MCA.

The District Court cited the decisions of Palmer v. R.L. Kautz & Co. (1983), 141 Cal.App.3d 155, 190 Cal.Rptr. 139, and Gonzales v. United States Fidelity & Guar. (1983), 99 N.M. 432, 659 P.2d 318, in support of its conclusion of law. These cases represent the law of two jurisdictions that have adopted an interpretation of their workers' compensation legislation different than that we adopted in Hayes and Vigue.

In California a worker can bring an independent action for intentional tortious conduct by an insurer provided the conduct is sufficiently outrageous and reprehensible. See Unruh v. Truck Insurance Exchange (1972), 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (action allowed when insurance agent established ostensible romantic relationship with claimant, took her to Disneyland, secretly filmed her reacting to his manipulations of rope bridges and then showed the film to a compensation court producing further emotional trauma to claimant). Unruh was a landmark California decision which we cited with general approval in both Hayes and Vigue.

The California Supreme Court in Unruh and subsequent appellate court decisions in that state have focused on the level of reprehensibility present. Mere negligent delay and rejection of claims that an insurance company considers exaggerated are not actionable. Palmer, supra. California decisions interpreting the California Labor Code's exclusivity provision have not been based on whether the

7

injury arose within the employment relationship. For instance in Fremont Indem. Co. v. Superior Court, Etc. (1982), 133 Cal.App.3d 879, 184 Cal.Rptr. 184, the appellate court specifically stated that the distinction of a separate injury not arising in the course of employment does not remove the exclusive jurisdiction of the California Workers' Compensation Appeals Board. In Hayes and Vigue, we adopted the opposite position. For this reason California decisions on remedy exclusivity are of limited assistance to our jurisdiction. Apart from the broad proposition set forth in 1972 by Unruh that intentional torts are actionable, our case law has independently evolved.

The New Mexico decision of Gonzales is more readily distinguished. Gonzales is a recitation of the general rule followed by New Mexico that if the Workers' Compensation Act provides a remedy for the alleged wrong, the remedy is exclusive. In both Gonzales and the earlier New Mexico decision of Dickson v. Mountain States Mut. Cas. Co. (1982), 98 N.M. 479, 650 P.2d 1, independent tort actions were held to be barred. In deciding Hayes and Vigue, we rejected the reasoning of jurisdictions like New Mexico that have generally held independent actions barred by their workers' compensation acts. See for example Hixon v. State Compensation Fund (1977), 115 Ariz. 392, 565 P.2d 898; Massey v. Armco Steel Co. (Tex.Civ.App. 1982), 635 S.W.2d 596; see generally Annot., 8 A.L.R.4th 902 (1981).

We reaffirm our approval of those decisions upholding the right of a worker to assert a separate claim for tortious conduct occurring outside the employment relationship and during the processing and settlement of a workers' compensation claim. Stafford v. Westchester Fire Ins. Co. of N.Y.,

8

Inc. (Alaska 1974), 526 P.2d 37; Gibson v. Nat. Ben Franklin Ins. Co. (Me. 1978), 387 A.2d 220; Hollman v. Liberty Mut. Ins. Co. (8th Cir. 1983), 712 F.2d 1259 (interpreting South Dakota law); Coleman v. American Universal Ins. Co. (1970), 86 Wis.2d 615, 273 N.W.2d 220; Martin v. Travelers Insurance Company (1st Cir. 1974), 497 F.2d 329.

Our decisions in Hayes, Vigue and Lipinski apply just as vigorously to the State Fund as they do Plan I self-insurers and Plan II private insurers.

Holding that Birkenbuel is entitled to pursue his cause of actions based in tort we must decide whether punitive damages are recoverable against the State Fund.

The State Compensation Insurance Fund is a separate bureau within the Division of Workers' Compensation of the Department of Labor and Industry. The lower court concluded as a matter of law: "The State Fund (Plan III) is a state agency subject to the Montana Torts Claims Act and punitive damages are not recoverable." Our decision in White v. State (Mont. 1983), 661 P.2d 1272, 40 St.Rep. 507, was cited in support of the trial court's decision.

In White this Court upheld the constitutionality of section 2-9-105, MCA, which immunizes the State from punitive damage assessments. We noted in White that the primary purpose of assessing punitive damages is to deter future unlawful conduct of the tort-feasor. The problem with assessing punitive damages against the government is that the deterrent effect is very remote; blameless taxpayers are the ones punished while the blameworthy agency is often not motivated to change its actions in conformance. White, supra.

9

This question applied to the State Fund is a close one. The Fund is imbued with many of the administrative indicia of a state agency. However, it is not directly funded by taxpayers. The State Fund is supported by premiums collected from its subscribing insureds.

A substantial punitive award, such as the $250,000 requested in the present case, would ultimately be charged to these subscribing employers. Annual dividends would be proportionately reduced to compensate for the punitive assessment.

Consequently, the purpose of assessing punitive damages would not be furthered by a recovery against the State Fund. Blameless employers would bear the brunt of the assessment. Accordingly, we hold punitive damages are not recoverable against the State Fund.

The summary judgment of the District Court is reversed. The case is remanded for further proceedings in accordance with this opinion.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

10

Mr. Justice Frank B. Morrison, Jr. specially concurs as follows:

I concur in the result. However, with respect to the punitive damage issue I cannot subscribe to the rationale.

In First Bank Billings v. Transamerica Insurance Co. (Mont. 1984), 679 P.2d 1217, 41 St.Rep. 573, we held that it did not violate public policy to provide insurance coverage for punitive damages although such insurance coverage removed the punitive burden from defendant and had the potential for shifting it to the insurance carrier and its policyholders. Furthermore, the argument made by the majority could as well be applied to any insurance carrier against whom an award of punitive damages has been made. In all cases the insurance carrier would pass the loss back to its policyholders. This has never provided the courts with reason to insulate such carriers from liability for punitive assessments.

I would simply hold that the State Insurance Fund is part of state government and immune from punitive damages under the applicable statute. White v. State (Mont. 1983), 661 P.2d 1272, 40 St.Rep. 507.

Justice

11