No. 87-11

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

ROBIN A. SPADARO,

        Plaintiff and Appellant,

  -vs-

MIDLAND CLAIMS SERVICE, INC.;
NORTH STAR CASUALTY SERVICE, INC.;
FIRST HORIZON INSURANCE COMPANY,

        Defendants and Respondents.

---

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William Speare, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Lewis E. Brueggemann, Billings, Montana

    For Respondent:

        Crowley, Haughey, Hanson, Toole & Dietrich; Jack
Ramirez, Billings, Montana
Keefer, Roybal, Hanson, Stacey & Jarussi; Earl J.
Hanson, Billings, Montana

---

Submitted on Briefs:  April 17, 1987

Decided:  July 21, 1987

Filed:

*Ethel M. Harrison*
_____
Clerk

Mr. Chief Justice J.A. Turnage delivered the Opinion of the Court.

Plaintiff Robin Spadaro appeals an order entered by the Thirteenth Judicial District Court, Yellowstone County, granting summary judgment to defendants. We affirm.

One issue is presented for our review:

Did the District Court err when it granted summary judgment in favor of defendants?

In August 1983, Robin Spadaro was an employee at the Carbon County Health Care Center in Red Lodge, Montana. The Carbon County Health Care Center is managed by Kare-More, Inc. (Kare-More). On June 15, 1983, Spadaro became employed on a part-time basis in the Health Care Center's laundry department. On August 1, 1983, appellant injured her lower back while lifting a basket of wet laundry.

Spadaro reported her injury in a timely manner. She completed a claim for workers' compensation and was treated by a physician. She was advised by her doctor, Robert Kerr, to take a week off work for bed rest. However, on August 9, 1983, T. K. Strong, also a Kare-More employee, submitted a written report that she had witnessed Spadaro dancing while at a local bar on August 8, 1983. In spite of Strong's report, Spadaro complained of continuing back pain. She was subsequently examined on August 19, 1983, by another physician, Dr. Richard Lewallen, and hospitalized in Billings.

At the time of Spadaro's injury, Kare-More was insured by First Horizon Insurance Company under Workers' Compensation Plan #2. North Star Casualty Service, Inc., was First Horizon's insurance adjuster. First Horizon and North Star are located in Minneapolis, Minnesota. Consequently, Midland Claims Service, Inc., located in Billings, was contacted by North Star to investigate Spadaro's workers' compensation claim.

2

North Star, on August 22, 1983, accepted Spadaro's claim and mailed payment of $234.33 (Check #1). At approximately the same time, First Horizon ordered an investigation of Spadaro's claim. On September 2, 1983, payment of $156.22 was issued to Spadaro (Check #2). Both checks were sent to Spadaro's post office box in Red Lodge.

Check #1 arrived in Red Lodge while Spadaro was hospitalized in Billings. Spadaro's brother, Tim Flammini, took possession of the check. Flammini forged Spadaro's signature and with her consent cashed Check #1. The record reveals that Spadaro owed Flammini for babysitting and consented to Flammini's request to retain the proceeds of Check #1.

Spadaro then contacted an attorney, Robert Skaggs, and told Skaggs she was not receiving her workers' compensation benefits. Skaggs, relying on Spadaro's false statements, requested North Star to stop payment on all checks issued to Spadaro. Skaggs also requested North Star to reissue a single check for the full amount of benefits owed.

When North Star stopped payment on Checks #1 and #2, North Star learned that Check #1 had been cashed. North Star suspended payment of benefits to Spadaro pending an investigation.

Spadaro was aware that North Star, in accord with her attorney's request, had stopped payment of both checks. However, Spadaro cashed Check #2 and used it for a rental deposit. Spadaro then sought the advice of a second attorney, Lewis Brueggemann. On September 20, 1983, Robert Skaggs withdrew as Spadaro's attorney.

On October 4, 1983, Brueggemann submitted an incorrect notice of attorney form to the Workers' Compensation Division. As a result, the Division refused to recognize Brueggemann as a counsel of record. Brueggemann subsequently completed the proper attorney authorization form and was recognized as counsel of record on October 12, 1983.

In early September 1983, Tom Mrachek, Midland's adjuster, began his investigation of Spadaro's claim. Mrachek found Spadaro had been treated at the Red Lodge clinic and released for work by Dr. Robert Kerr. Mrachek also found that Spadaro, apparently without a referral, had seen another physician. Spadaro's second physician, Dr. Lewallen hospitalized Spadaro and placed her in traction.

On September 8, 1983, Midland requested additional medical information from Spadaro's attorney, Skaggs. However, when Skaggs withdrew as Spadaro's attorney, Midland's request was not honored. On September 16, 1983, Midland was notified by Darlene Monroe, claims adjuster for North Star, that Robin Spadaro had left Montana for Colorado. Midland then waited until October 4, 1983, for Spadaro to contact its office.

Midland again, on October 14, 1983, requested Spadaro's medical records from Spadaro's new attorney, Lewis Brueggmann. Midland's adjuster, Tom Mrachek, explained to Brueggemann in that "none of those medical reports indicate the current problem is directly associated with [Spadaro's] industrial accident of 8/1/83." On October 28, 1983, Midland received a letter from Dr. Lewallen which stated that ". . . Spadaro twisted her back while working at the Health Care Center." Upon receipt of the letter, Midland immediately advised North Star to accept Spadaro's claim and pay all temporary total disability benefits. North Star did not immediately accept Midland's advice. North Star continued its investigation based on additional information in Dr. Lewallen's report that Spadaro may have injured her back some eight months earlier in a domestic disturbance involving her ex-husband.

On November 7, 1983, Spadaro filed her claim for breach of the implied duty of good faith and fair dealing. On November 30, 1983, North Star issued payments of $1,900.80 to Spadaro for all temporary total disability benefits dating

4

back to August 1, 1983. North Star's payment included $234.33 previously paid to Spadaro. First Horizon and North Star have continued to pay Spadaro full benefits to date.

Based upon the foregoing facts as shown through undisputed deposition testimony, the District Court, on December 17, 1985, granted respondent's motion for summary judgment.

Issue

The sole issue presented for our review is whether the District Court erred when it granted summary judgment in favor of respondents?

The standard by which this Court reviews an appeal from a motion granting summary judgment is whether the record, when taken as a whole, shows no genuine issue of material fact. Kronen v. Richter (Mont. 1984), 683 P.2d 1315, 1317, 41 St.Rep. 1312. Where critical testimony is taken by deposition, this Court will closely examine the District Court's findings. When reviewing deposition testimony the reviewing court is in a like position to the District Court and is freely able to review such evidence. Kaiser v. Town of Whitehall (Mont. 1986), 718 P.2d 1341, 1342, 43 St.Rep. 176.

A party opposing a motion for summary judgment may not rest upon the allegations or denials of his pleadings. The party's response must set forth specific facts showing there is a genuine issue for trial. National Gypsum Co. v. Johnson (1979), 182 Mont. 209, 595 P.2d 1188, 1189. Conclusory or speculative statements are insufficient to raise a genuine issue of material fact. Kronen, 683 P.2d at 1318.

In Vigue v. Evans Products (1980), 187 Mont. 1, 608 P.2d 488, 491, we held that an injured employee could bring a claim against a Plan I (self) insurer for commission of intentional torts or bad faith in the processing and handling of a workers' compensation claim. We held in Hayes v. Aetna Fire Underwriters (1980), 187 Mont. 148, 609 P.2d 257,

5

262, that an injured employee could bring a separate claim against a Plan II insurer (private insurance carrier) for intentional torts and bad faith in adjusting and processing a workers' compensation claim.

> No one should be allowed intentionally and tortiously to cut off a claimant unilaterally for whatever purpose they choose and then hide behind workers' compensation exclusivity in assurance that the only retribution will come in the favor of a compensation penalty paid for by society.

Hayes, 609 P.2d at 262.

In Birkenbuel v. Mont. State Compensation Ins. Fund (Mont. 1984), 687 P.2d 700, 704, 41 St.Rep. 1647, we held that an injured employee seeking punitive damages for intentional torts or bad faith against a Plan III insurer (the State Fund) was barred by public policy. In Birkenbuel, we recognized punitive damages are designed to punish an intentional tortfeasor. However, we held it would be improper to allow "punishment" of the State Fund, since innocent Montana taxpayers would be forced to reimburse the State Fund. Birkenbuel, 687 P.2d at 704.

In Carlson v. Anaconda Company (1974), 165 Mont. 413, 529 P.2d 356, we held an injured employee was limited in a negligence claim against his employer to remedies with the Workers' Compensation Division. However, Carlson, 165 Mont. at 417, 529 P.2d at 358, citing Reed v. Hartford Acc. & Indemnity Co. (D. Pa. 1973), 367 F.Supp. 134, 135, permits an injured employee's claim for bad faith, where an insurer acts intentionally with malice when settling a workers' compensation claim.

### Unfair Claims Settlement Practices

Plaintiff and appellant Spadaro alleges that respondents acted in bad faith when they suspended or denied Spadaro's workers' compensation benefits. Spadaro claims

6

respondents violated § 33-18-201, MCA, which prohibits unfair claim settlement practices by an insurer. Appellant cites no facts to support her allegation that § 33-18-201, MCA, was violated.

The moving party has the initial burden of establishing the absence of any genuine issue of material fact. Mustang Beverage Company, Inc. v. Jos. Schlitz Brewing Company (1973), 162 Mont. 243, 246, 511 P.2d 1, 3. However, once the moving parties' burden has been met, as found by the District Court, the burden of establishing a genuine issue of material fact shifts to appellant Spadaro. In order to prevent summary judgement, Spadaro must produce evidence sufficient to raise a genuine issue of fact. Kaiser v. Town of Whitehall (Mont. 1986), 718 P.2d 1341, 1342, 43 St.Rep. 176.

On appeal, Spadaro has failed to cite any disputed facts. Instead, Spadaro has relied on general allegations of disputed facts. A party opposing summary judgment "[m]ust set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), M.R.Civ.P.. National Gypsum v. Johnson, (1979), 182 Mont. 209, 212, 595 P.2d 1188, 1189

Additionally, Spadaro's allegations that various sections of 33-18-201, MCA, were violated by respondents is not supported by the record. Respondents began paying benefits to Spadaro when they issued Check #1 on August 22, 1983. Respondents accepted Spadaro's claim even though they had evidence that her claim might not be genuine. On September 2, 1983, respondents issued Check #2. After receiving the checks, Spadaro fraudulently told her first attorney, Robert Skaggs, that she had not received the checks. North Star, following Skaggs's request, stopped payment on the checks. North Star became suspicious upon learning that the checks had already been cashed. In response to the confusing situation created by Spadaro, North Star began its investigation.

Respondents were aware that Spadaro was initially advised by Dr. Robert Kerr on August 2, 1983, to take a week off for bed rest. Respondents were also aware that Kerr then advised her to return to work. However, Spadaro was examined by Dr. Lewallen apparently without a referral from Dr. Kerr. On August 19, 1983, Dr. Lewallen placed Spadaro in traction in a Billings hospital. Given this information, respondents sought Spadaro's complete medical records.

On September 8, 1983, respondents requested Robert Skaggs, Spadaro's first attorney, to forward appellant's medical records. Respondent's request was not honored following Skaggs' withdrawal on September 20, 1983. Subsequent to Skaggs's withdrawal, Spadaro did not contact respondents until October 4, 1983. Her new attorney, Lewis Brueggemann, failed to complete a client authorization until October 11, 1983. On October 14, 1983, respondents requested Brueggemann to provide them with Spadaro's medical records. On October 28, 1983, Brueggemann sent Dr. Richard Lewallen's report, which specifically stated that claimant Spadaro had injured her back in a work-related accident on August 1, 1983.

The record reveals that Spadaro was the primary cause for the delay in receiving her compensation benefits. Spadaro's (1) fraudulent conduct, (2) change of attorneys and (3) failure to provide respondents with her medical records delayed receipt of her benefits until October 28, 1983. Spadaro complains that she did not receive benefits for four months. However, the record clearly reveals that she is responsible for a delay of approximately three months.

The record also reveals that Spadaro and her new attorney Lewis Brueggemann were aware that § 39-71-610, MCA, enabled Spadaro by petitioning the division, to receive benefits for forty-nine days pending a hearing on the matter. Brueggemann and Spadaro elected not to utilize § 39-71-610, MCA. Spadaro is not required to utilize the benefits of this

8

section. However, her failure to do so is a proper consideration.

### Violations of §§ 39-71-606 through -609, MCA

Appellant Spadaro contends respondents violated § 39-71-606, MCA, which requires an insurer to accept or deny a claim within thirty days. On August 22, 1983, respondents accepted liability within thirty days of appellant's claim for benefits. The record reflects respondents accepted liability within thirty days of Spadaro's submission of a claim for compensation benefits. Therefore, we need not address this issue.

Spadaro next contends § 39-71-607, MCA, requiring an insurer to suspend payments pending receipt of medical records for no more than thirty days was also violated. Appellant Spadaro has completely failed to produce evidence that respondents suspended payment for more than thirty days. Therefore, we will not review this issue.

Spadaro also contends § 39-71-608, MCA, which allows an insurer to make compensation payments without accepting liability, was violated. Spadaro claims in a general manner, that respondents violated this statute by failing to provide her with compensation advice forms until July 30, 1984. However, Spadaro has failed to show any intentional misconduct or any resulting prejudice. Further, respondents on September 8, 1983, provided Spadaro with a letter, similar to a compensation advice form. Respondents' failure to adhere to § 39-71-608, MCA, was technical in nature and not made in bad faith. Respondents' violation of § 39-71-608, MCA, under these facts, does not constitute bad faith.

Finally, Spadaro claims respondents violated § 39-71-609, MCA, which requires an insurer to provide a claimant with written notice, fourteen days before termination of compensation benefits. In the case at hand, respondents suspended Spadaro's benefits after Spadaro

9

fraudulently claimed that she had not received Checks 1 or 2. Respondents then investigated Spadaro's alleged injury and subsequent fraudulent conduct. The record reveals that respondents failed to provide Spadaro with written notice that her compensation benefits were being suspended. In doing so, respondents violated § 39-71-609, MCA.

In Catteyson v. Great Falls Mobile Home Center (1979), 183 Mont. 284, 286, 599 P.2d 341, 343, we held when an insurer violates § 39-71-609, MCA, the insurer remains liable for compensation benefits until proper notice is served. Claimant Spadaro has received all compensation benefits previously owed by respondent. Further, Spadaro has continued to receive benefits to date. Spadaro has provided no evidence indicating respondents acted intentionally or with malice when they suspended benefits. Hayes v. Aetna Fire Underwriters (1980), 187 Mont. 148, 153, 609 P.2d 257, 260. A technical violation of § 39-71-609, MCA, was committed by respondents. However, respondents' conduct does not rise to the level of bad faith.

Appellant Spadaro contends "[o]bviously, the record is replete with genuine issues of material fact." However, appellant failed to cite a single disputed material fact. After reviewing the trial court's examination of the record, we hold that the trial court properly found that appellant Spadaro failed to show any disputed material fact. Summary judgment is proper when the record shows no genuine issue of material fact. Kronen v. Richter (Mont. 1984), 683 P.2d 1315, 1317, 41 St.Rep. 1312.

The record also supports the trial court's finding that much of the complained of delay was the result of Spadaro's own calculated and fraudulent conduct. We have long held one cannot take advantage of his own wrong. Section 1-3-208, MCA.

We hold the District Court did not err in granting summary judgement.

Accordingly, the District Court is affirmed.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison._

_Fred J. Weber_

_L. C. Gulbrandson_

_William E. Hunt Sr._

_John C. Sheehy_

_R. C. McDonough_
Justices

11