No. 92-437

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

LESTER D. NORMAN,

    Plaintiff and Appellant,

-vs-

CITY OF WHITEFISH, and TRUSTEES OF CITY
OF WHITEFISH POLICE RETIREMENT FUND,

    Defendants and Respondents.

FILED

APR 28 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        John H. Bothe and Laurie Wallace; Bothe &
        Lauridsen, Columbia Falls, Montana

    For Respondents:

        Donald E. Hedman; Hedman, Hileman & LaCosta,
        Whitefish, Montana

Submitted on Briefs:    January 14, 1993

Decided:    April 28, 1993

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Eleventh Judicial District, Flathead County, the Honorable Michael H. Keedy presiding. Appellant Lester Norman (Norman) appeals from a judgment of the District Court denying his claim for police disability retirement benefits. We affirm.

The issue on appeal is whether the District Court erred in affirming the Whitefish City Council's denial of Norman's claim for police disability retirement benefits. We note that this appears to be a case of first impression regarding the applicable statutes.

Norman served as a reserve police officer with the Whitefish Police Department from 1969 until 1973, at which time he entered a full-time position with the department. He left the department in 1975, but returned again in 1979 as a reserve officer. He became a full-time officer again in 1984 and worked as a full-time officer until March 16, 1988, when he quit the department.

During the course of his employment, Norman was involved in two automobile accidents. The first occurred on November 16, 1980, while he and a fellow officer pursued another vehicle. The car Norman was driving slid off an embankment, and Norman hit his head on the ceiling of the car. He filed a workers' compensation claim that was accepted by the City of Whitefish, which was self-insured. The second accident occurred February 12, 1987, when the car he was driving slid on the ice and struck a snow bank as he turned the corner on a city street. Norman hit his head and shoulder against

2

the door frame and window of the car. The city also accepted a workers' compensation claim for this accident and paid his medical expenses. Norman suffered no wage loss from either accident and continued to work after the 1987 accident until March 16, 1988, when he quit the department due to stress and anxiety problems.

In an affidavit submitted into evidence, Norman stated that he "became very nauseous and jittery feeling" while patrolling that day. He stated that he became ill and told the city manager that he was very sick and had to leave because of his nerves. He told the city manager that he could not take any more of the treatment he had received on the force. It appears, though, that Norman had decided to leave the police department before his shift started. According to a voluntary statement given by the officer whom Norman relieved of duty that day, Norman informed him at the beginning of the shift that he was leaving the department. The officer made this statement to the chief of police on the day Norman quit.

The "treatment" Norman referred to in his affidavit related to a history of tension between him and other officers and the police chief. He had been denied promotion twice in the eight months before he quit. Also, Norman had complained of abuses occurring in the department such as mistreatment of prisoners and excessive use of force by other officers. He claims his relationship with the chief and other officers, the incidents of abuse he witnessed, and the fact that he did not believe anyone was acting on his complaints elevated his pre-existing anxiety problems to a

3

disabling level.

He then petitioned the Whitefish City Council for police disability retirement benefits on the basis of anxiety-stress syndrome. The city council held a meeting on June 27, 1988, and on July 18, 1988, voted unanimously to deny the request. In November 1988, Norman filed the present action in District Court seeking benefits and claiming that the stress and pressure he experienced at work caused the anxiety problems that led him to quit working.

On or about December 5, 1989, Norman filed a petition in Workers' Compensation Court seeking temporary total disability benefits, claiming that a cervical disk injury was related to the automobile accident of February 12, 1987. In August 1990, the Workers' Compensation Court denied that claim, concluding that Norman had not met his burden of showing "that his current ' . . . ability to engage in gainful employment is diminished . . .' by his February 12, 1987 accident." The Workers' Compensation Court added, "If anything, the evidence is overwhelming that claimant's anxiety disorder is his predominant disabling condition." This Court affirmed the Workers' Compensation Court in Norman v. City of Whitefish (1991), 248 Mont. 490, 812 P.2d 1259.

In December 1989, Norman filed another petition with the Whitefish City Council seeking police retirement disability benefits. This petition included the anxiety-stress claim and a claim for benefits due to herniated discs in his cervical spine. The city council denied this petition also. On May 4, 1990, Norman

filed an amended complaint in District Court adding the herniated disk claim.

The District Court held a hearing on May 24, 1991. After reviewing numerous depositions and Norman's extensive medical records, the court issued its findings of fact, conclusions of law, and judgment on May 18, 1992. The court made extensive findings as to both the cervical disk injury and the anxiety-stress problem. The District Court concluded that the findings and conclusions of the Workers' Compensation Court regarding the cervical disk injury were res judicata. As to the anxiety disorder, the court concluded that it was "not caused by injuries or disabilities in the active discharge of his duties as a police officer, but [was a] pre-existing condition[] for which Plaintiff had been treated many times. . . ." The District Court, therefore, affirmed the city council's denial of benefits.

As for the cervical disk injury, Norman claims the court erred in concluding that the Workers' Compensation Court's decision had res judicata effect on the proceeding in the District Court. He argues that the elements of res judicata have not been satisfied and that in considering the matter res judicata, the District Court ignored relevant medical evidence developed after the workers' compensation case had been heard. He also claims that the District Court's determination that he was not entitled to benefits is clearly erroneous because it is not supported by substantial evidence.

5

In reviewing the decision in a civil case tried to a court sitting without a jury, this Court will uphold a trial court's findings unless the findings are clearly erroneous. Rule 52(a), M.R.Civ.P.; Interstate Prod. Credit Ass'n v. Desaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. Findings are clearly erroneous if not supported by substantial evidence. Desaye, 820 P.2d at 1287. This Court will uphold the result reached in the district court, regardless of the reasoning used by the district court, if the decision is correct. District No. 55 v. Musselshell County (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253; Jerome v. Pardis (1989), 240 Mont. 187, 192, 783 P.2d 919, 922.

Section 19-10-402, MCA, governs an award of police disability retirement benefits. It provides as follows:

**Eligibility for disability retirement.** When a police officer receives injuries or disabilities in the active discharge of his duties as a police officer, which injuries or disabilities are, in the opinion of the board of police commissioners or city council of the city or town, of such character as to impair his ability to discharge his duties as an active police officer, he shall be placed on the retired list of the city or town.

The officer is then entitled to disability benefits under § 19-10-502, MCA, which reads in part:

**Disability retirement allowance.** When a police officer is transferred from the active list to the retired list of a city, he shall thereafter receive monthly payments from the city's police retirement fund, as follows:
(1) A police officer who is eligible under 19-10-402 before completing 20 years of service shall receive a sum equal to one-half the base salary, excluding overtime and payments in lieu of sick leave and annual leave, he was receiving as an active officer computed on the highest salary received in any one month during his last year of active service.

6

## The Cervical Disk Injury Claim

The District Court made extensive findings regarding Norman's cervical disk injury and its effect on his ability to work, ultimately finding that "the evidence submitted to the Whitefish City Council (as Police Pension Fund Commission) was not so persuasive as to require a determination of entitlement under the applicable code section." Norman raises issue with the District Court's findings because he claims they are nothing more than an adoption of those submitted by the City and the Workers' Compensation Court. He cites In re Marriage of Johnson (1989), 238 Mont. 153, 157, 777 P.2d 305, 308, where this Court said that the district court "errs in adopting a party's proposed findings only if the court does so 'without proper consideration of the facts' and with a lack of independent judgment." (Citation omitted.) In those cases we look to whether the "'findings and conclusions are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and are supported by the evidence.'" Marriage of Johnson, 777 P.2d at 308 (citation omitted). Because the parties' proposed findings and conclusions are not contained within the record and subject review, we are unable to address this point. See Glaspey v. Workman (1988), 230 Mont. 307, 749 P.2d 1083; First Nat'l Bank of Cut Bank v. Springs (1987), 225 Mont. 62, 731 P.2d 332. However, even if this matter were before us, our decision renders the point moot as we do not find error in the District Court's findings and conclusions.

7

The District Court made over thirty findings related to the cervical disk injury. A sample of those findings indicates that Norman clearly did not quit his job because of any difficulties related to the cervical disk injury, and that the court did not err in determining that any injuries he received did not entitle him to disability benefits.

> 10. Prior to March 16, 1988, Plaintiff voiced no concern to his fellow police officers that he was suffering any discomfort or disability relating to his cervical spine.
>
> 11. Plaintiff did not leave the employment of the City of Whitefish Police Department by reason of the injury to his cervical spine.
>
> . . .
>
> 15. The history related to Dr. Mahnke was that Plaintiff left the force in the "context of political and personnel problems in the force."
>
> . . .
>
> 18. Dr. Mahnke in his notes states that Plaintiff was "fighting for disability for anxiety, for anxiety-stress disorder, Whitefish Police Department, 1979-1988."
>
> 19. Even in October, 1989, Plaintiff still felt his disability was related to his nervous disorder, not to the herniate discs in his cervical spine.
>
> . . .
>
> 21. Dr. Mahnke, neurosurgeon, indicates that Plaintiff's spondylosis may be simply a degenerative process, although it could be caused by trauma; in fact, intellectually, he would have trouble discriminating them completely.
>
> 22. Were it not for the history related by Plaintiff, Dr. Mahnke could not relate the condition to any accidents or injuries.
>
> . . .

8

25. A delay of approximately nine years, from the 1980 automobile accident until the 1989 MRI study, and considering that the condition complained of by Plaintiff may be the result of natural degeneration, traumatically-induced, the likelihood that Plaintiff's condition is related to his automobile accident is highly questionable.

. . .

29. Although acting as Plaintiff's consulting psychiatrist, Dr. Gray did not know of claimant's neck complaints until the morning of his deposition, March 21, 1990. Dr. Gray had previously prescribed time away from work for Plaintiff due to his anxiety or stress.

. . .

31. The findings of the Workers' Compensation Court were that at no time did Dr. Wenzel (chiropractor) advise claimant to quit work due to his physical problems. After seeing the claimant in February, 1987, Dr. Wenzel does not reference cervical complaints, but rather "trapezius fibrocytis," which refers to the upper shoulder muscles.

. . .

33. Judge Reardon found that, "during the entirety of the claimant's pursuit of retirement disability benefits in calendar year 1988, his claim for disability was for stress. No mention was made of any disability related to the February 12, 1987 automobile accident. In fact, until the denial of his disability retirement benefits, claimant did not pursue any Workers' Compensation benefits."

While pursuing promotions in August 1987 and January 1988, Norman did not mention any problems related to the cervical disk injury. As specifically found by the District Court, Norman's chiropractor, Dr. Wenzel, never advised him to be off work or to quit work because of any physical problems. At the time Norman quit, his physician, Dr. Miller, clearly indicated that it was for stress and anxiety, not a physical problem. In fact, Dr. Miller

9

had not heard of the 1987 accident until he spoke with Norman's attorney on the date of his deposition for the workers' compensation claim--March 22, 1990. Dr. Miller actually had no opinion as to whether the cervical disk problems were related to the 1987 accident. Dr. Mahnke, a neurosurgeon who examined Norman once, could not tell from reading the MRI, or from the examination, whether the 1987 accident changed the underlying anatomical condition of Norman's neck.

The parties stipulated to the introduction of numerous depositions and medical records. This Court is in as good a position as the district court to review evidence of this nature, Spadaro v. Midland Claims Serv., Inc. (1987), 227 Mont. 445, 449, 740 P.2d 1105, 1107-1108, and has done so freely. Having done so, we conclude that substantial evidence supports the District Court's finding that the evidence "was not so persuasive as to require a determination of entitlement under the applicable code section." As we conclude that the District Court correctly determined that Norman was not entitled to benefits based on the cervical disk injury, we need not address whether the Workers' Compensation Court's decision had res judicata effect here.

Stress and Anxiety Related Claim

Dr. Gray, Norman's psychiatrist, diagnosed Norman as suffering from "generalized anxiety disorder and psychological factors influencing physical condition." In his April 8, 1991, deposition,

10

Dr. Miller testified that Norman had a predisposition toward anxiety and that he had less ability to handle stress factors than the average person.

The District Court also made extensive findings recounting Norman's anxiety and stress problems before he became a full-time officer in 1984. Those findings cite numerous diagnoses of anxiety, anxiety reactions, and chronic anxiety. Based on this history, the court concluded:

> The anxiety disorder and panic attacks which Plaintiff complains of are not caused by injuries or disabilities in the active discharge of his duties as a police officer, but were pre-existing conditions for which Plaintiff had been treated many times by the doctors at Family Physicians Clinic in Whitefish.

Dr. Kuffel, a Whitefish physician who reviewed Norman's medical records in 1990 at the city's request, reached much the same conclusion.

Norman claims the District Court misinterpreted the statute by requiring a separate work-related injury or disability aside from the anxiety disorder. He argues that his anxiety disorder is his work-related disability and that an aggravation of a pre-existing condition should be compensable as it is for workers' compensation injuries and occupational diseases. We note, however, that both the Workers' Compensation Act and the Occupational Disease Act exclude coverage for physical or mental conditions arising from emotional or mental stress. See § 39-71-119(3) and § 39-72-102(10), MCA. Therefore, we do not find his argument persuasive.

Although Norman's employment with the Whitefish Police

11

Department may have been stressful and he may have experienced anxiety problems while serving on the force, substantial evidence supports the District Court's finding that his problems did not result from the active discharge of his duties. We conclude that the District Court did not err in determining that Norman's history of problems precluded him from receiving police disability retirement benefits.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

12

April 28, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John H. Bothe and Laurie Wallace
Bothe & Lauridsen, P.C.
P. O. Box 2020
Columbia Falls, MT  59912

Donald E. Hedman
Hedman, Hileman & LaCosta
433 Second Street
Whitefish, MT  59937

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy