No. 97-555

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 49

SARA SCHMASOW,

Plaintiff and Appellant,

v.

NATIVE AMERICAN CENTER, PAT MAKI,

GRACE FAIRHURST, DON FISH, and DUKE MARTEL,

also John Does 1 through 10,

Defendants and Respondents.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Cameron Ferguson; Hartelius, Ferguson, Baker & Kazda;

Great Falls, Montana

For Respondents:

Robert L. Sterup; Dorsey & Whitney, LLP; Billings, Montana

Submitted on Briefs: October 15, 1998

Decided: March 16, 1999

Filed:

_____

Justice Jim Regnier delivered the opinion of the Court.

**¶1. The appellant, Sara Schmasow, brought an action against the defendants, the Native American Center, Inc. (NAC) and others, claiming that NAC should have selected her for the position of executive director pursuant to an Indian employment preference provision in NAC's contract with the Indian Health Service. NAC hired another Indian, James Parker Shield, instead. Schmasow argued in the Eighth Judicial District Court, Cascade County, that Shield did not qualify for the employment preference since he was not a member of a federally recognized Indian tribe. Schmasow appeals the District Court's conclusion that Shield was eligible for the employment preference and its grant of summary judgment in NAC's favor. We affirm the District Court.**

**¶2. The dispositive issue in this case is whether Shield, who is not a member of a federally recognized Indian tribe, qualifies for an Indian employment preference pursuant to NAC's contract with the Indian Health Service.**

## FACTUAL BACKGROUND

**¶3. The Native American Center (NAC) is a nonprofit urban Indian organization that offers health care services to urban Indians in Great Falls, Montana. NAC's board of directors are duly elected by the urban Indian community which it serves, the majority of whom are members of the Little Shell Chippewa Tribe. The Little Shells have been without a reservation since the 1890s. Since the early 1990s, nearly 3700 enrolled members of the Little Shell Chippewa Tribe have lived in the Great Falls area.**

**¶4. Pursuant to Title V of Pub. L. No. 94-437, the Indian Health Care Improvement Act (IHCIA), now set forth at 25 U.S.C. §§ 1651-1660d, NAC receives its funding through a contract with the Bureau of Indian Affairs and the Indian Health Service (IHS). The contract is administered by the Billings Area Indian Health Service office (BIHS). At issue in this case is a contract between NAC and IHS that went into effect January 1, 1994.**

¶5. In 1976, Congress passed Title V of the IHCIA to authorize IHS to enter into contracts to provide health care services to growing numbers of urban Indians who do not receive federal Indian health care assistance on reservations. *See* 25 U.S.C. § 1651-1652; *see also* 3 U.S.C.C.A.N. at 2750 (1976). Congress specifically identified Great Falls as an urban area with a potential need for such services. *See* 3 U.S.C.C.A.N. at 2754 (1976). Through Title V, Congress incorporated Indian self-determination and local control by allowing urban Indian organizations to provide the necessary health care services. *See* 25 U.S.C. § 1652. Congress also required that contracts entered into with urban Indian organizations be made in accordance with other federal contracting laws and regulations, including the Indian Self-Determination and Education Assistance Act ("Indian Self-Determination Act"). *See* 25 U.S.C. § 1656(a).

¶6. At issue in this case is the Indian employment preference provision of the Indian Self-Determination Act found at 25 U.S.C. § 450e(b). Section 450e(b) requires that an Indian be given an employment preference for any position filled under "any contracts . . . or grants to Indian organizations or for the benefit of Indians."

¶7. In accordance with this statute and the regulation found at 48 C.F.R. § 352.270-2, NAC's contract with IHS contains an Indian employment preference provision. The provision provides that "[t]he Contractor agrees to give preference in employment opportunities under the contract to Indians who can perform required work, regardless of age (subject to existing laws and regulations), sex, religion or tribal affiliation." This provision was in effect when NAC hired James Parker Shield as its executive director.

¶8. The NAC reviewed four applications for the executive director position and ranked them. After the top scoring applicant withdrew from the application process, the board voted between the second- and third-ranked applicants, who were Shield and Schmasow respectively. There was a tie between the board members' votes, so the board chairperson voted and chose Shield for the position.

¶9. Schmasow contends that by not hiring her the NAC board violated the Indian employment preference provision in its contract with IHS because she met at least the minimal requirements for the job and, unlike Shield, she qualified for the Indian employment preference. Schmasow is an enrolled member of the federally recognized Chippewa-Cree Tribe. Shield is a member of the Little Shell Chippewa

Tribe, which is recognized by the State of Montana but does not share the federally recognized designation. On this basis, Schmasow contends that she should have been given preference over Shield in the hiring process.

¶10. Originally, Schmasow complained to the BIHS. In turn, the BIHS contacted the NAC board. After correspondence between the BIHS and NAC, the BIHS suggested that it might withdraw NAC's funding for the executive director position unless NAC provided evidence that Shield was a member of a federally recognized tribe. Faced with possible loss of funding, the NAC board eventually discontinued Shield's employment as executive director.

¶11. On May 17, 1996, Schmasow filed an action against NAC in Montana's Eighth Judicial District Court, Cascade County, seeking damages for the loss of income she would have received had she been offered the executive director position. Both Schmasow and NAC moved for summary judgment on this issue. On September 5, 1997, the District Court granted summary judgment in favor of NAC and against Schmasow.

## STANDARD OF REVIEW

¶12. On appeal from a summary judgment, this Court reviews a case *de novo* based on the same criteria applied by the district court. *See Stutzman v. Safeco Insurance Co.* (1997), 284 Mont. 372, 376, 945 P.2d 32, 34 (citing *Treichel v. State Farm Mut. Auto. Ins. Co.* (1997), 280 Mont. 443, 446, 930 P.2d 661, 663). Thus,

[t]he movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove by more than mere denial and speculation that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. [This Court] reviews the legal determination made by a district court as to whether the court erred.

*Stutzman*, 284 Mont. at 376, 945 P.2d at 34 (quoting *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903). Our review of a summary judgment is much broader than other appeals. *See District No. 55 v. Musselshell County* (1990), 245 Mont. 525, 527, 802 P.2d 1252, 1253 (quoting *McCain v. Batson* (1988), 233 Mont. 288, 298,

760 P.2d 725, 731). If we agree with the conclusions of the district court, we can affirm the district court's decision, if correct, regardless of its reasons. *See Norman v. City of Whitefish* (1993), 258 Mont. 26, 30, 852 P.2d 533, 535; *Musselshell*, 245 Mont. at 527, 802 P.2d at 1253; *Jerome v. Pardis* (1989), 240 Mont. 187, 192, 783 P.2d 919, 922.

## DISCUSSION

**¶13. Does Shield, who is not a member of a federally recognized Indian tribe, qualify for an Indian employment preference pursuant to NAC's contract with the Indian Health Service?**

**¶14. In the Indian employment preference provision of NAC's contract with IHS, Indian is defined pursuant to the Indian Self-Determination Act as "a person who is a member of an Indian Tribe." Indian tribe is further defined as "a Tribe, pueblo, band, nation, or other organized group or community, including any Alaska Native village, which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." *See also* 25 U.S.C. § 450b(d)-(e); 48 C.F.R. § 352.270-2(e)(1)-(2). The parties disagree over whether Shield is an Indian based on this definition.**

**¶15. Schmasow argues on appeal that Shield is not an Indian because he is not a member of a federally recognized Indian tribe. Federally recognized tribes are tribes which the Secretary of Interior lists pursuant to 25 U.S.C. § 479a-1, with which the federal government deals on a government-to-government basis in recognition of their tribal sovereignty. *See* 25 U.S.C. § 479a notes. Schmasow contends that only federally recognized Indian tribes generally are eligible for special programs and services provided by the United States. Thus, only members of these tribes can satisfy the definition of Indian under the Indian employment preference provision.**

**¶16. NAC argues that the District Court was correct when it found that the Little Shell Chippewa Tribe is eligible to receive the benefits of federal Indian programs and services, even though it is not a federally recognized Indian tribe. NAC contends that through the health care funding it receives from IHS, the Little Shell Chippewa Tribe is an eligible tribe and, therefore, Shield, as a member of the Little Shells, qualifies for the Indian employment preference. Citing the language of Title V of the IHCIA, at 25 U.S.C. § 1656(f), which states that "[u]rban Indians, as defined in section 1603(f) of this title, shall be eligible for health care or referral services," NAC**

reasons that so long as the Little Shells are urban Indians, they are eligible for special federal programs and services. An urban Indian is an individual who resides in an urban center and who meets one or more of four listed criteria.[1] *See* 25 U.S.C. §§ 1603(f) and 1603(c). The District Court concluded, and NAC argues in this appeal, that Shield meets at least one of these criteria, because he "is a member of a[n] . . . organized group of Indians, including . . . those recognized now or in the future by the State in which they reside." 25 U.S.C. § 1603(c)(1) (emphasis added). The State of Montana has long recognized the Little Shell Chippewa Tribe.

¶17. Although the District Court's analysis is persuasive, we conclude it is not technically correct. By relying on the definition of urban Indian, the District Court simply established that Shield, as an individual member of the Little Shell Tribe, is eligible for federal Indian health care benefits. To satisfy the definitions of Indian and Indian tribe in the Indian employment preference provision, however, one must establish that the Little Shell Chippewa Tribe, itself, is eligible for the health care benefits. The language of the Indian employment preference provision requires there to be an "organized group or community [of Indians] . . . which is recognized as eligible for the special programs and services provided by the United States." Thus, the individual Indian's status is not controlling.

¶18. In the final analysis, we conclude that the District Court reached the proper result, however. Under 25 U.S.C. § 1652, the United States government is directed to "enter into contracts with, or make grants to, urban Indian organizations to assist such organizations in the establishment and administration, within the urban centers in which such organizations are situated, of programs which meet the requirements set forth in this subchapter." Before IHS can enter into a contract with an urban Indian organization, however, several considerations must be made. The statute at 25 U.S.C. § 1653(b) and the regulation at 42 C.F.R. § 36.351 require that the urban Indian organization serve an ample-sized urban Indian population who have unmet health care needs. An urban Indian organization is defined as "a nonprofit corporate body situated in an urban center which . . . is governed by an Indian controlled board of directors . . . [and which] [p]rovides for the maximum participation of all interested Indian groups and individuals." 42 C.F.R. § 36.302(v). A review of the contract between IHS and NAC indicates that its purpose is to provide health care services to a target population of Indians residing in Great Falls, Montana. Included in the Great Falls Indian population is the Little Shell Chippewa Tribe.

¶19. Under this statutory and regulatory framework, we conclude that Shield was an Indian entitled to the Indian hiring preference. NAC receives federal funding under Title V of the IHCIA to provide health care services to a targeted group, or community, of Indians in Great Falls, including members of the Little Shell Chippewa Tribe. The definition of Indian tribe for employment preference purposes includes a "tribe, pueblo, band, nation, or other organized group or <u>community</u> [of Indians], including any Alaska Native village . . ., which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 450b(e) (emphasis added). Thus, the Little Shell Chippewa Tribe fits the definition of Indian tribe because it is part of an Indian community which receives federal Indian funding for special programs and services, even though it is not a federally recognized tribe. Since Shield is an enrolled member of the Little Shell Chippewa Tribe, he satisfies the definition of Indian and is eligible for the Indian hiring preference.

¶20. Any other interpretation of these statutes would be contrary to the very rationale behind the IHCIA and the Indian Self-Determination Act. By enacting Title V of the IHCIA, Congress's intention was to provide federal benefits to non-reservation and non-federally recognized Indian communities. Through the Indian Self-Determination Act, an Indian employment preference was incorporated into Title V grants to Indian communities. The United States Supreme Court has stated that a statutory Indian employment preference is directed to increase participation by the governed, similar in kind to a locally elected official. *See Morton v. Marcari* (1974), 417 U.S. 535, 554, 94 S. Ct. 2474, 2484, 41 L. Ed. 2d 290, 302. An Indian employment preference enables the federal government, and its contractors, to draw more heavily from the recipient group when staffing services that will affect the recipient community. *See Marcari,* 417 U.S. at 554, 94 S. Ct. at 2484, 41 L. Ed. 2d at 302. Thus, to conclude that Shield, who is a member of the recipient Indian community, cannot qualify for an Indian preference would be contrary to the meaning of the Indian preference law and the rationale of the United States Supreme Court.

¶21. Furthermore, we are not persuaded by Schmasow's argument that only members of federally recognized tribes listed under 25 U.S.C. § 479a-1 qualify for the Indian employment preference. Section 479a-1 provides that "[t]he Secretary shall publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United

States to Indians because of their status as Indians." Schmasow argues that since the language of § 479a-1, "eligible for the special programs and services provided by the United States to Indians because of their status as Indians," is the same language used in the definition of Indian tribe in the Indian Self-Determination Act, we should read § 479a-1 to limit the definition of Indian tribe under the Indian Self-Determination Act to only those Indian tribes which the Secretary recognizes. We conclude, however, that § 479a-1 must be read in conjunction with 25 U.S.C. § 479. Although § 479 defines an Indian as a member of "any recognized Indian tribe now under Federal jurisdiction," its application is limited to a specific list of statutes which does not include the IHCIA or the Indian Self-Determination Act. Schmasow attempts to resolve this by arguing that Congress enacted the IHCIA and the Indian Self-Determination Act after it enacted § 479 and merely overlooked amending § 479. We are not persuaded by this argument. To agree with this argument would cause us to unnecessarily insert language in § 479 that does not already exist. In addition, Schmasow does not cite any authority to support her position. We likewise do not agree with Schmasow's argument that the legislative history of § 479a-1 shows that Congress wanted to clarify the definition of Indian for all special programs and services provided to Indians by the United States. The legislative history of § 479a-1, in fact, shows that Congress meant to address only those Indian tribes that have a quasi-sovereign status and a government-to-government relationship with the United States. The legislative history indicates no Congressional intent to take away the federal benefits offered to other Indian tribes that are not federally recognized or to modify the contractual provisions associated with the federal benefits they receive. We conclude that statutes like the IHCIA continue to afford federal benefits to Indian communities that are not federally recognized and, hence, those communities continue to satisfy the definition of Indian tribe in the Indian Self-Determination Act.

¶22. Thus, we affirm the District Court's grant of summary judgment in favor of NAC. Accordingly, we need not consider any of the separately stated issues that the parties included in their briefs.

¶23. We affirm the District Court.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER


Justice Karla M. Gray, dissenting.


**¶24. I concur in part in the Court's opinion, but respectfully dissent from the portion of that opinion which holds that the District Court reached the right result, although for the wrong reason, in granting summary judgment to the Native American Center (NAC). More specifically, I agree with the Court that the trial court erred in concluding that Shield's Indian status as an "urban Indian" entitled him to the Indian employment preference. I disagree that this case--which is before us on a limited summary judgment record premised on the "urban Indian" analysis--can be properly resolved on an alternative theory.**

**¶25. There is no question but that the Court states our correct standard in reviewing a trial court's summary judgment ruling. I also agree that, under certain circumstances, we can affirm a trial court's decision, if correct, regardless of its reasons. The cases cited for the "right result, wrong reason" approach here, however, do not support the Court's reliance on an alternative legal theory not argued in the District Court or this Court and for which no adequate record exists by which we can--or the District Court could have, given the state of the record and the basis for summary judgment argued there--determine that summary judgment in the NAC's favor is appropriate here.**

¶26. *Norman* was before us after a bench trial by the district court and the entry of extensive findings on the evidence presented. Determining that the findings were not clearly erroneous, we affirmed the district court's application of the law to those facts. *Norman*, 258 Mont. at 30-31, 852 P.2d at 535-36. Unlike *Norman*, we have no findings before us based on evidence relating to the alternative legal theory the Court applies, simply because no trial was held; in addition, the record before us does not contain affidavits or other evidence in support of--and opposition to--the legal theory never argued in the District Court. *Musselshell County*, on the other hand, was a summary judgment case; the relevant facts there, however, were undisputed and we used the "right result, wrong reason" approach to affirm the trial court by applying a different legal theory to the undisputed facts. *Musselshell County*, 245 Mont. at 527, 802 P.2d at 1253. In the present case, we do not have before us undisputed facts necessary for application of the Court's alternative legal theory. As a result, it is my view that the Court ignores the "no genuine issues of material fact" portion of the summary judgment criteria, creating a significant and troubling departure from our traditional practice in reviewing summary judgment decisions.

¶27. Indeed, our analysis of a district court's improper reliance on an issue not raised or argued in the summary judgment context in Kenyon v. Stillwater County (1992), 254 Mont. 142, 835 P.2d 742, is applicable to--and preclusive of--the Court's approach here. In *Kenyon*, we held a trial court in error for granting summary judgment on an issue not raised and argued, determining that the court was bound by the issues presented and that, "[b]y granting summary judgment on the basis of an issue not before it, the court effectively denied [the opposing party] notice and an opportunity to be heard. . . ." *Kenyon*, 254 Mont. at 149, 835 P.2d at 746-47. The same reasoning applies to this Court's actions here which, in addition, are in derogation of fundamental summary judgment principles relating to the moving party being required--and strictly--to establish both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. In this case, the fact is that--since the record before us is so limited--it cannot be determined that no genuine issue of material fact exists relating to whether either the Little Shell Chippewa Tribe or the assemblage of urban Indians living in Great Falls is an "urban Indian organization" or an "organized Indian community" for purposes of applying the statutes referenced by the Court and, therefore, we cannot properly determine that the NAC was entitled to judgment as a matter of law. For these reasons, I would reverse the District Court's grant of summary judgment in NAC's favor and remand for such proceedings as the parties might determine were appropriate in light of that

reversal; such proceedings might well include, of course, another motion for summary judgment by the NAC on the alternative legal theory relied on by this Court and the opportunity for both parties to present relevant evidence in support of--and opposition to--any such motion.

¶28. In addition to the matters discussed above, I have concerns with portions of the Court's legal analysis and I submit that, perhaps particularly in the complex arena of Indian law, it is dangerous and unwise to piece together an analysis not presented by any party based on unestablished facts. In light of my view that no record exists on which we can determine that the NAC met its initial burden of establishing the absence of genuine issues of material fact on an alternative theory never argued, however, I would not reach the legal analysis necessary to affirm the District Court's decision here.

¶29. I would reverse the District Court's grant of summary judgment to the NAC and remand for further proceedings and I respectfully dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

Justice James C. Nelson joins in the foregoing dissenting Opinion of Justice Karla M. Gray.

/S/ JAMES C. NELSON

1. [1] Section 1603(g) defines urban center as a community which has a sufficient urban Indian population with unmet health needs.