**Vernon SOLOMON, Plaintiff–Appellant,**

**v.**

**INTERIOR REGIONAL HOUSING AUTHORITY, Defendant–Appellee.**

No. 01–35766.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 9, 2002.

Filed Dec. 20, 2002.

Michael J. Walleri, Law Offices of Michael J. Walleri, Fairbanks, AK, for the plaintiff-appellant.

Tracey L. Knutson and Craig Wm. Black, Sisson & Knutson, P.C., Anchorage, AK, for the defendant-appellee.

Before: B. FLETCHER, ALARCON, and GRABER, Circuit Judges.

GRABER, Circuit Judge.

Title 25 U.S.C. § 450e(b) provides that "[a]ny contract, subcontract, grant, or subgrant pursuant to [an act] authorizing Federal contracts with or grants to Indian organizations or for the benefit of Indians, shall require that to the greatest extent feasible," preference shall be given to Indians in the employment and training opportunities connected with the grant. This appeal requires us to decide whether that statute creates a private right of action for a Native Alaskan who applied unsuccessfully for a job with a Native Alaskan regional housing authority. The answer to that question is "no."

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Vernon Solomon is a Native Alaskan. Defendant Interior Regional Housing Authority (Authority) is a regional housing authority formed by Native Alaskan associations pursuant to Alaska Statute § 18.55.996. The Authority provides housing services to low-income Native Alaskans. 1982 Op. Alaska Att'y Gen. (June 8, No. J-66-220-82A) (1982 WL 43622); see also 25 U.S.C. § 4103(21)(B) (recognizing regional housing authorities in the state of Alaska for the purpose of the Native American Housing Assistance and Self-Determination Act).

The Authority receives block grants under the Native American Housing Assistance and Self-Determination Act of 1996, 25 U.S.C. §§ 4101-4243 (NAHASDA). Those grants are administered by the Secretary of Housing and Urban Development (HUD). 25 U.S.C. § 4102. The grants are subject to the Indian preference requirements of 25 U.S.C. § 450e(b). 24 C.F.R. §§ 1000.48 and 1000.50.

According to his complaint, Plaintiff worked for the Authority until 1990, when he suffered on-the-job injuries for which he received a workers' compensation award. Upon recovering from his injuries, Plaintiff again sought employment with the Authority. In 1996, Plaintiff applied for the position of maintenance counselor, but was not hired. Instead, the Authority hired another Native Alaskan. In 1998, Plaintiff applied for the position of tribal housing officer. Again, the Authority declined to hire Plaintiff and, this time, opted instead to employ a non-Native.

Plaintiff initiated this action in January 2000. He brought two claims: one under 25 U.S.C. § 450e, and a state-law claim alleging that the Authority retaliated against him because he had made a work-

ers' compensation claim. His claim under § 450e alleged, in pertinent part: "The failure to employ Mr. Solomon in deference to a non-Native hire violates 25 USC [§ ] 450e and agency regulations applicable to[the Authority]." Plaintiff sought damages as a remedy.

The parties filed cross-motions for summary judgment. The district court requested supplemental briefing from the parties on two issues that they had not raised: whether the Authority was protected by sovereign immunity and whether 25 U.S.C. § 450e creates a private right of action for an unsuccessful job applicant. After the submission of the supplemental briefs, the district court granted summary judgment in favor of the Authority on the ground that § 450e creates no private right of action. The court dismissed Plaintiff's supplemental statelaw claim without prejudice, and Plaintiff timely appealed.

## STANDARD OF REVIEW

■ We review de novo the district court's grant of summary judgment. *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir.1999) (en banc). Viewing the facts in the light most favorable to the non-moving party, we must determine whether there are any genuine issues of material fact and whether the district court correctly applied the applicable law. *Id.* We may affirm a grant of summary judgment on any ground supported by the record. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 750 (9th Cir.2001).

## DISCUSSION

When Congress enacts a statute that is silent with respect to its enforcement, it could be intending to create any one of at least five remedial regimes: (1) an affected party has a private right of action in court for which no exhaustion of administrative remedies is required; (2) an affected party has a private right of action in court for which exhaustion is required; (3) an affected party has a right to choose between pursuing a private right of action in court or an administrative remedy; (4) an affected party has no private right of action in court but, instead, is limited to an administrative remedy; or (5) an affected party has no enforcement mechanism available to it. Here, the record is silent as to whether Plaintiff pursued an administrative remedy. That silence is of no moment, however, unless Congress intended the second of those remedial alternatives. Plaintiff argues that the first alternative applies. For the reasons that follow, we hold that Congress intended the fourth alternative to apply here; that is, Plaintiff has no private right of action in court whether or not he pursued an administrative remedy.

Title 25 U.S.C. § 450e(b) provides, as relevant to this case:

> Any ... grant ... pursuant to this subchapter, the Act of April 16, 1934 (48 Stat. 596), as amended[25 U.S.C.A. § 452 et seq.], or any other Act authorizing Federal contracts with or grants to Indian organizations or for the benefit of Indians, shall require that to the greatest extent feasible—
>
> (1) preferences and opportunities for training and employment in connection with the administration of such contracts or grants shall be given to Indians[.]

NAHASDA calls for the Secretary of HUD to make block grants "on behalf of Indian tribes to carry out affordable housing activities." 25 U.S.C. § 4111(a). Grants made under NAHASDA are therefore covered by the Indian Self–Determination and Education Assistance Act, 25 U.S.C. §§ 450–458bbb–2 (ISDEAA), as a "grant ... pursuant to [an act] authorizing ... grants to Indian organizations or for

the benefit of Indians." 25 U.S.C. § 450e(b); *see* 24 C.F.R. § 1000.48; 24 C.F.R. § 1000.50 ("To the greatest extent feasible, preference and opportunities for training and employment in connection with the administration of grants awarded under this part shall be given to Indians."). Defendant receives block grants under NAHASDA. Plaintiff argues that Defendant violated the ISDEAA, 25 U.S.C. § 450e(b), when it hired a non-Native— instead of him—for the position of tribal housing advisor and that the statute authorizes a private right of action for damages stemming from the violation.

In *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court of the United States established a four-factor test for analyzing whether the violation of a federal statute gives rise to a private right of action.[1] *See also Cannon v. Univ. of Chi.*, 441 U.S. 677, 689, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). First, we must determine "whether the statute was enacted for the benefit of a special class of which the plaintiff is a member." *Id.* Second, we must ascertain whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one." *Cort*, 422 U.S. at 78, 95 S.Ct. 2080. This factor requires an examination of legislative history. *Cannon*, 441 U.S. at 694, 99 S.Ct. 1946. Third, we consider whether implying a private remedy "would frustrate the underlying purpose of the legislative scheme." *Id.* at 703, 99 S.Ct. 1946. Finally, we analyze "whether implying a federal remedy is inappropriate because the subject matter involves an area basically of concern to the States." *Id.* at 708,

99 S.Ct. 1946. In a case involving an Indian tribe, we apply the final factor by determining whether "federal remedies would interfere with matters traditionally relegated to the control of semisovereign Indian tribes." *Id.* at 691 n. 13, 99 S.Ct. 1946 (citing *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)).

A.  *Class Benefited by § 450e*

In analyzing whether the first factor weighs in favor of implying a private right of action, we look at the text of the statutory provision at issue. *Cannon*, 441 U.S. at 689, 99 S.Ct. 1946. The Supreme Court has held that specific wording that prohibits the denial of a benefit to an individual "person" or "employee" supports an inference that Congress intended to provide a private right of action. *Id.* at 689, 99 S.Ct. 1946. By contrast,

> [t]here would be far less reason to infer a private remedy in favor of individual persons if Congress, instead of drafting [the statute at issue] with an unmistakable focus on the benefited class, had written it simply as a ban on discriminatory conduct by recipients of federal funds or as a prohibition against the disbursement of public funds to educational institutions engaged in discriminatory practices.

*Id.* at 690–93, 99 S.Ct. 1946.

Here, the operative wording of 25 U.S.C. § 450e does not refer to individual Indians. Rather, the statute simply requires that, when grants are made to "Indian organizations or for the benefit of Indians" in general, Indians should receive associated

---

1.  We recently noted that "subsequent decisions have emphasized that the key inquiry is whether Congress intended to provide the plaintiff with a private right of action" and that "there has even been some suggestion that *Cort* has been overruled." *First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1121 (9th Cir.2000). We concluded that, "[n]evertheless, we still find the four-factor test helpful in determining whether a statute provides a private right of action." *Id.* at 1122.

employment or training opportunities "to the greatest extent feasible." The statute confers a benefit (a required term in contracts and grant agreements) collectively, rather than individually.

Moreover, the traditional meaning of the word "preference" in the context of Indian employment suggests that a preference is not an individual right. In *Morton v. Mancari*, 417 U.S. 535, 553–54, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974), the Supreme Court held that the "Indian preference" in Bureau of Indian Affairs employment is constitutional. Examining the long history of the "Indian preference" in federal statutes, the Court noted that the employment preference was not so much a racial preference as it was "an employment criterion reasonably designed to further the cause of Indian self-government." *Id.* at 554, 94 S.Ct. 2474. That characterization of the Indian preference demonstrates that it is not ordinarily intended to create rights for individual Indians, but rather serves to advance the political goal of self-governance for the Indian tribes and the Indian people as a whole.

On the other hand, the collective benefit of the Indian preference here arguably has "an unmistakable focus on the benefited class." *Cannon*, 441 U.S. at 691, 99 S.Ct. 1946. The very nature of the benefit is an employment and training preference in favor of Indian applicants, who are individuals by definition.

In view of these competing inferences, the first *Cort* factor is in equipoise. That factor alone weighs neither for nor against a conclusion that Congress intended to create a private right of action under 25 U.S.C. § 450e.

### B. *Legislative Intent*

We turn next to the second *Cort* factor, legislative intent. Nothing in the legislative history of 25 U.S.C. § 450e addresses explicitly whether Congress intended to create a private right of action against a recipient of grant funds subject to that provision. *See generally* H.R.Rep. No. 93–1600 (1974), *reprinted* in 1974 U.S.C.C.A.N. 7775. However, 25 U.S.C. § 450a articulates the congressional policy underlying the ISDEAA. That section shows that Congress intended to allow Indian people and tribes greater freedom in self-governance at the tribal or community level, not to confer individual rights on individual Indians:

> (a) The Congress hereby recognizes the obligation of the United States to respond to the strong expression of the Indian people for self-determination by assuring maximum Indian participation in the direction of educational as well as other Federal services to Indian communities so as to render such services more responsive to the needs and desires of those communities.

> (b) The Congress declares its commitment to the maintenance of the Federal Government's unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole through the establishment of a meaningful Indian self-determination policy which will permit an orderly transition from the Federal domination of programs for, and services to, Indians to effective and meaningful participation by the Indian people in the planning, conduct, and administration of those programs and services. In accordance with this policy, the United States is committed to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities.

25 U.S.C. § 450a(a), (b). The references in § 450a to "the Indian people as a whole," to the tribes, and to the Indian "communities" imply that the benefits conferred by § 450e are not bestowed on individual Indians, but instead are bestowed collectively on a community of Indians.

This implication is strengthened by the application of a familiar principle of statutory construction: When Congress includes a provision in one part of a statute but excludes it in another, we deem the difference intentional and assign meaning to the omission. *Andreiu v. Ashcroft*, 253 F.3d 477, 480 (9th Cir.2001) (en banc). Congress did provide a private right of action to enforce the provisions of the ISDEAA against federal officials who are responsible for administering the grants or self-determination contracts. 25 U.S.C. § 450m-1. The absence of a parallel provision with respect to recipients of grant funds, such as the Authority, strongly implies that Congress did not intend to provide a private right of action against them.

In summary, Congress did not intend to provide a private right of action under § 450e against a grant recipient by a disappointed Indian job applicant. Thus, the second *Cort* factor supports the absence of a private right of action under § 450e.

C. *Purpose of the Legislation*

The third *Cort* question for us to answer is whether it would be consistent with the underlying legislative purpose of § 450e to imply a private right of action. The answer to that question likewise weighs in favor of a holding that there is no such right.

As discussed above, Congress' stated purpose in enacting the ISDEAA was to increase Indian tribal autonomy in running federally administered programs. *See Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 154 F.3d 1117, 1122 (9th Cir.1998) (stating that the purpose of the ISDEAA is to promote Indian participation in the administration of federal programs). But subjecting an Indian organization to an individual action for damages for every decision to hire a non-Indian for a particular position would undermine the Indian organization's autonomy, not enhance it.

We are mindful that the text of § 450e(b) is broad enough to cover contractors or grant recipients who are not Indians. It applies to contracts and grants not only *with* Indian organizations but also contracts and grants *"for the benefit of* Indians." 25 U.S.C. § 450e(b) (emphasis added). For that reason, not all potential defendants would be Indian organizations. When the defendant is non-Indian, a private right of action would not conflict with the statutory purpose of promoting tribal self-governance. However, many—if not most—of the agreements subject to § 450e involve a contractor or grant recipient that is an Indian organization. Congress manifestly thought so, because it referred first to contracts and grants with Indian organizations. Additionally, self-determination contracts, the primary type of contract governed by the Act, are *by definition* contracts with tribal organizations. 25 U.S.C. § 450b(j). Consequently, the third *Cort* factor disfavors the implication of a private right of action under § 450e.

Plaintiff argues, correctly, that Indian tribal autonomy is not the sole purpose of the ISDEAA. Another purpose is to increase the participation of individual Indians in federally run programs. *See* 25 U.S.C. 450a(a) (recognizing "the obligation of the United States to respond to the strong expression of the Indian people for self-determination by assuring maximum Indian participation in the direction of . . . Federal services to Indian communities so as to render such services more responsive

to the needs and desires of those communities"). Although it is true that permitting an individual claim to enforce the Indian employment preference might serve to ensure that greater numbers of Indians are employed, the Supreme Court has instructed that, "[w]here Congress seeks to promote dual objectives in a single statute, courts must be more than usually hesitant to infer from its silence a cause of action that, while serving one legislative purpose, will disserve the other." *Santa Clara Pueblo,* 436 U.S. at 64, 98 S.Ct. 1670. This is just such a situation.

### D. *Appropriateness of Federal Remedy*

Finally, the fourth *Cort* factor also weighs against a holding that there is a private right of action for a disappointed job applicant. Again, this analysis rests on the proposition that most potential defendants in an action under § 450e would be Indians or Indian organizations and that Congress fully expected that to be the case.

In *Santa Clara Pueblo,* the Supreme Court analyzed 25 U.S.C. § 1302(8), which prohibits an Indian tribe "in exercising powers of self-governance" from "deny[ing] to any person within its jurisdiction the equal protection its laws or depriv[ing] any person of liberty or property without due process of law." The issue for decision was whether § 1302(8) created a private right of action for its enforcement. Relying heavily on the fourth *Cort* factor, the Court concluded that, in the face of congressional silence on the matter, enforcement of the statute should be left to the tribes. *Santa Clara*

*Pueblo,* 436 U.S. at 71–72, 98 S.Ct. 1670. The Court

> recognized that the tribes remain quasi-sovereign nations which, by government structure, culture, and source of sovereignty are in many ways foreign to the constitutional institutions of the federal and state governments.... [E]fforts by the federal judiciary to apply the statutory prohibitions of § 1302 in a civil context may substantially interfere with a tribe's ability to maintain itself as a culturally and politically distinct entity.

*Id.* Therefore, although federal law governs Indian affairs, "the role of courts in adjusting relations between and among tribes and their members ... [is] restrained." *Id.* at 72, 98 S.Ct. 1670.[2]

As in *Santa Clara Pueblo,* Congress has not expressly permitted a private action against an Indian or Indian tribe. In view of Congress' overarching desire to augment tribal autonomy through the IS-DEAA, the fourth *Cort* factor does not support the implication of a private right of action under 25 U.S.C. § 450e.

### E. *Available Remedies*

In summary, three of the four *Cort* factors dictate the conclusion that Congress did not intend to create a private right of action to enforce 25 U.S.C. § 450e against a grant recipient for alleged noncompliance with the Indian employment preference. The fourth factor does not detract from our conclusion. We thus affirm the district court's grant of summary judgment on that ground.

We note, however, that the absence of a direct private right of action under § 450e

---

**2.** Unlike in *Santa Clara Pueblo,* enforcement of the statute here is not left entirely to the tribes because, as discussed below, HUD has promulgated regulations containing an administrative remedy. Nonetheless, the basic principle of *Santa Clara Pueblo* remains:

when Congress—which retains plenary power over Indian affairs—is silent about federal judicial enforcement, we should be loathe to infer it. The existence of an administrative intrusion into tribal affairs does not necessarily imply or justify an added judicial intrusion.

does not leave an Indian aggrieved by a NAHASDA grantee's unlawful administration of the Indian preference without a remedy. That is because NAHASDA block grants contain their own remedial scheme, established by HUD regulation. Title 24 C.F.R. § 1000.54 provides:

The following procedures are applicable to complaints arising out of any of the methods of providing for Indian preference contained in this part, including alternate methods. Tribal policies that meet or exceed the requirements of this section shall apply.

(a) Each complaint shall be in writing, signed, and filed with the recipient.

(b) A complaint must be filed with the recipient no later than 20 calendar days from the date of the action (or omission) upon which the complaint is based.

(c) Upon receipt of a complaint, the recipient shall promptly stamp the date and time of receipt upon the complaint, and immediately acknowledge its receipt.

(d) Within 20 calendar days of receipt of a complaint, the recipient shall either meet, or communicate by mail or telephone, with the complainant in an effort to resolve the matter. The recipient shall make a determination on a complaint and notify the complaint, in writing, within 30 calendar days of the submittal of the complaint to the recipient. The decision of the recipient shall constitute final administrative action on the complaint.

Similarly, an Indian aggrieved by the failure of a party to a self-determination contract to administer the preference requirement properly may have a remedy directly under the terms of the contract. *See Schmasow v. Native Am. Ctr.*, 293 Mont. 382, 978 P.2d 304, 305–06 (1999) (analyzing whether the defendant—a recipient of federal funds under a self-deter-

mination contract—had breached the contractual provision that was included in the contract pursuant to 25 U.S.C. § 450e).

Although we cannot tell from the record before us whether Plaintiff pursued an administrative remedy, we need not answer that factual question to decide this case. Whether or not Plaintiff pursued an administrative remedy, he may not enforce § 450e through a court action for damages.

## CONCLUSION

■ Congress did not create a direct private right of action under 25 U.S.C. § 450e for an Indian job applicant when a non-Indian is hired instead of the applicant. Rather, the applicant must resort to those remedies established by the terms of the contract or grant itself. The district court's order granting summary judgment is

## AFFIRMED.

BETTY B. FLETCHER, Circuit Judge, dissenting:

The majority holds that there is no implied private right of action for a Native American to enforce a violation of the Indian employment preference requirement contained in 25 U.S.C. § 450(e)(b). Because the majority's position is contrary to settled precedent and effectively eviscerates a statutory preference duly enacted by Congress, I dissent.

### I.

The majority's analysis gives lip service to, but fundamentally misapplies, the four-factor test set forth in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). Beginning with the first prong, there can be little question that § 450e was enacted for the benefit of a special class of which Solomon is a member. The Supreme Court's language, in both *Cort*

and *Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), specifies that the benefit must inhere to "a special class," not "specific individuals in a special class," in order to satisfy the test. The operative wording of § 450e does precisely that: It enacts a required *employment and training* preference in favor of Indian applicants. It strains common sense to construe this provision otherwise than as referring to individual members of the special class of Indians. *Accord Cannon*, 441 U.S. at 690–93 & n. 13, 99 S.Ct. 1946 (distinguishing between statutes that speak to the general public benefit, or simply ban discriminatory conduct, and those that are "phrased in terms of the persons benefited"); *see also First Pac. Bancorp, Inc. v. Helfer*, 224 F.3d 1117, 1123 (9th Cir.2000) ("In our own cases, we have determined that the first factor of the *Cort* test is satisfied when there is an explicit reference to the individuals for whose benefit the statute was enacted.").

I also disagree with the majority's characterization of *Mancari* as somehow standing for the proposition that an employment preference is per se not an individual right. Simply put, this is not what the case holds. The majority takes one sentence out of context and characterizes it as the holding of the case. *Mancari*'s holding that Indian preference for employment in the Bureau of Indian Affairs was constitutional had nothing to do with whether the preference was a "right." Rather, the Court held, in response to the argument that the Indian employment preference requirement was "invidious racial discrimination," 417 U.S. at 551, 94 S.Ct. 2474, that it was not:

> Contrary to the characterization made by appellees, this preference does not constitute "racial discrimination." Indeed, it is not even a "racial" preference. Rather, it is an employment criterion reasonably designed to further the cause of Indian self-government and to make the BIA more responsive to the needs of its constituent groups.... The preference, as applied, is granted to Indians not as a discrete racial group, but, rather, as members of quasi-sovereign tribal entities whose lives and activities are governed by the BIA in a unique fashion.... Here, the preference is reasonably and directly related to a legitimate, nonracially based goal. This is the principal characteristic that generally is absent from proscribed forms of racial discrimination.

*Id.* at 553, 94 S.Ct. 2474; *see also id.* at 553 n. 24, 94 S.Ct. 2474 ("The preference is not directed towards a "racial" group consisting of "Indians"; instead, it applies only to members of "federally recognized" tribes. This operates to exclude many individuals who are racially to be classified as "Indians." In this sense, the preference is political rather than racial in nature."). The *Mancari* Court was concerned with whether Indian employment preference constituted invidious discrimination *on the basis of race*. It did not address whether Indian employment preference conferred a right at all, much less a private right of action in court.

This, then, is the majority's first mistake: The first *Cort* factor is patently not in "equipoise." It weighs in favor of a private right of action.

As to the second *Cort* factor, I agree with the majority to this extent: The legislative history of § 450e is silent as to enforcement. However, my agreement ends there. The majority suggests that because (1) the legislative history is silent, (2) 25 U.S.C. § 450a expresses an intention to promote Indian self-governance, and (3) Congress provided a private right of action against federal officials explicitly in 25 U.S.C. § 450m–1, the second *Cort* factor—

legislative intent—weighs *against* implying a private right of action here. I disagree.

First, legislative silence is not enough, by itself, to support an inference against providing a private right of action. *See Cannon*, 441 U.S. at 694, 99 S.Ct. 1946 ("[I]n situations ... in which it is clear that federal law has granted a class of persons certain rights, it is not necessary to show an intention to create a private cause of action, although an explicit purpose to deny such cause of action would be controlling.") (internal quotation marks omitted); *see also First Pac. Bancorp*, 224 F.3d at 1124 ("The absence of a statement of intent to create a remedy does not necessarily mean that no remedy is available. Indeed, if that were the case, the Supreme Court would not have developed a test for an implied private right of action.").

Second, I find the majority's argument about the references to Indian self-governance in this context no more persuasive than its application to the first *Cort* factor. Section 450a does discuss the importance of Indian self-determination to "the Indian people as a whole" and "individual Indian tribes," but it also speaks at the same time about ensuring an orderly transition "to effective and meaningful participation by the Indian people in the planning, conduct, and administration of" programs and services. In fact, § 450e confers some benefits on "the Indian people as a whole" and others on individual Indian participants in the programs to be administered. It is simply disingenuous to suggest otherwise.

My analysis, therefore, is that the first *Cort* factor weighs in favor of a private right of action, and the second factor is silent. The law of this Circuit is that, when the first two *Cort* factors point in conflicting directions, analysis of the remaining two factors is warranted. *Oliver v. Sealaska Corp.*, 192 F.3d 1220, 1224 (9th Cir.1999) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979)).

As to the third *Cort* factor, as already discussed above, § 450e has at least two important underlying legislative purposes. The text of § 450e(b) speaks directly to the furtherance of one of these purposes by requiring that, "to the greatest extent feasible ... preferences and opportunities for training and employment in connection with the administration of such contracts or grants shall be given to Indians." While there can be no question that the promotion of tribal autonomy is another purpose of ISDEAA, the *text of the statute itself* perforce constrains tribal autonomy by imposing the Indian employment preference in the first place. It strains logic and common sense to say that the statutory text, duly enacted by Congress (and not under constitutional or other challenge here), is legitimate, but that the rights explicitly conferred by the statute may not be enforced in federal court because *enforcing* them, as opposed to merely conferring them, will burden tribal autonomy impermissibly.

This case presents an entirely different scenario from *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), on which the majority relies for the proposition that there can be no implied cause of action where finding one would arguably disserve another statutory purpose. At the heart of *Santa Clara Pueblo* was a question that could not lie closer to the core of the very concept of Indian self-determination: the right of Indian tribes to determine who is a member of a tribe and who is not. The Court held that there was no implied private right of

action under the Indian Civil Rights Act[1] because creating a federal cause of action in this context *"plainly* would be at odds with the congressional goal of protecting tribal self-government." *Santa Clara Pueblo,* 436 U.S. at 64, 98 S.Ct. 1670 (emphasis added). It is difficult to conceive of an issue more central to tribal self-government than the right of self-determination.

In this case, on the other hand, the majority concludes that the enforcement of a specific federal statutory employment preference so undermines tribal autonomy generally as to warrant eviscerating that preference by judicial fiat. In addition to violating a fundamental canon of statutory construction—the specific trumps the general, *see Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 524, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989)—this conclusion is simply wrong. If there is a balancing problem with undermining tribal autonomy here, that problem was resolved by Congress in enacting the employment preference. Allowing aggrieved individuals to sue to enforce that preference certainly does not undermine tribal self-government any more than conferring the preference in the first place. Rather, it simply gives effect to Congress's mandate by allowing enforcement of the preference.

Enforcement of *any* statute that serves multiple purposes—as most do—will further some objectives while arguably hindering others. To say that no private right of action could ever be warranted in this context is extreme. While the Court in *Santa Clara Pueblo* may well have been correct that it is not the job of the courts to balance competing legislative objectives of equal weight, that scenario is not this case. Here, we have a broad statute with multiple purposes and a specific statutory

provision that requires employment preferences for Indians to advance one of those purposes. A private right of action advances the purpose of § 450e.

Finally, the fourth *Cort* factor asks whether a federal remedy is appropriate in this context. As the district court in this case recognized, Congress has plenary authority over Native American affairs. *See Alaska Chapter, Assoc. Gen. Contractors of Am. v. Pierce,* 694 F.2d 1162, 1167 n. 4 (9th Cir.1982) ("The plenary power of Congress to deal with the special problems of Indians is drawn both explicitly and implicitly from the Constitution itself.") (citing *Mancari,* 417 U.S. at 551–52, 94 S.Ct. 2474). Moreover, unlike *Santa Clara Pueblo,* this is not a case where anyone argues that enforcement of the statute is a matter entirely to be "left to the tribes"— *HUD* has promulgated the administrative enforcement scheme for NAHASDA block grants. Nor does it raise the *Santa Clara Pueblo* issue of whether core tribal issues should be removed from the tribal context and adjudicated in a federal forum.

Rather, this case raises the issue of whether a tribal housing authority and recipient of federal grant money is conducting its hiring procedures consistently with the requirements of a federal statute. The enforcement in federal court of federal statutes and federal grant schemes is appropriate.

I would hold that three of the four *Cort* factors weigh in favor of, not against, a private right of action here, and the fourth is silent. I would find a private right of action to enforce the Indian employment preference provision of § 450e.

---

**1.** It should also be noted that the Court made this decision against the backdrop of a totally different legislative history and statutory

structure than the one at issue here. 436 U.S. at 65–72, 98 S.Ct. 1670.

## II.

My remedy would be to remand for consideration of Solomon's claim. Solomon may not be able to proceed with his claim if he has not exhausted his administrative remedies prior to filing suit. The plain language of 24 C.F.R. § 1000.54 reflects that its administrative scheme is both mandatory and applicable to Solomon's complaint. The title of the regulation is: "What procedures apply to complaints arising out of any of the methods of providing for Indian preference?" The regulation goes on to specify:

(a) Each complaint *shall* be in writing, signed, and filed with the recipient.

(b) A complaint *must* be filed with the recipient no later than 20 calendar days from the date of the action (or omission) upon which the complaint is based.

(c) Upon receipt of a complaint, the recipient *shall* promptly stamp the date and time of receipt upon the complaint, and immediately acknowledge its receipt.

(d) Within 20 calendar days of receipt of a complaint, the recipient *shall* either meet, or communicate by mail or telephone, with the complainant in an effort to resolve the matter. The recipient *shall* make a determination on a complaint and notify the complainant, in writing, within 30 calendar days of the submittal of the complaint to the recipient. *The decision of the recipient shall constitute final administrative action on the complaint.*

24 C.F.R. § 1000.54 (2002) (emphases added).[2] *See also Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, 58 S.Ct.

459, 82 L.Ed. 638 (1938) (noting "the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"); *McKart v. United States,* 395 U.S. 185, 193–95, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); *Marshall v. Burlington Northern, Inc.,* 595 F.2d 511, 513 (9th Cir.1979) ("It is well established in administrative law that before a federal court considers the question of an agency's jurisdiction, sound judicial policy dictates that there be an exhaustion of administrative remedies."); *General Atomics v. United States Nuclear Regulatory Comm'n,* 75 F.3d 536, 541 (9th Cir.1996).

Accordingly, as a threshold matter, the district court would have to determine whether Solomon had exhausted his administrative remedies prior to filing suit. The answer is unclear from the record now before us. If the district court finds exhaustion, it would then proceed to the merits of Solomon's claim.

## III.

I fully acknowledge that this case presents a question that is far from straightforward. The fundamental mandate to construe Indian-law statutes liberally in favor of Indians, *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 766, 105 S.Ct. 2399, 85 L.Ed.2d 753 (1985), does not provide a ready answer when, as here, Indian interests fall on both sides of the issue. However, in the case of the ISDEAA, and specifically § 450e, Congress spoke clearly in explaining the balance of competing interests. The ISDEAA has

**2.** The majority writes that we need not be concerned about finding no private right of action in federal court because Indian job applicants have this avenue of remediation open to them. Note that this "remedy" essentially consists of a formal request to the

*housing authority*—the initial decisionmaker—to change its mind as to its own decision. The notion that this administrative option is somehow equivalent to, or a valid substitute for, a private right of action in court is simply wrong.

multiple purposes, but § 450e implements an employment preference, where feasible, in favor of Indian job applicants. Although not explicitly authorized, a private right of action is consistent with and furthers the requirement of employment preference for Indians. The majority seeks to substitute its own judgment that tribal self-determination trumps Congress's mandate of Indians' right to job preference. Accordingly, I dissent.